OPINION OF THE COURT
 

 Levine, J.
 

 Over a period of 10 years, ending in 1989, Jerome Rutberg, an insurance broker working for the Baer Insurance Agency in Philadelphia, perpetrated a fraudulent scheme by which he procured checks from plaintiff Guardian Life Insurance Company of America, representing policy loans or dividend withdrawals made payable to Guardian policyholders who had purchased life insurance though Baer, and pocketed the proceeds by forging the payees’ indorsements. Guardian sued defendant Chemical Bank, the drawee on all the checks, for damages of over $253,000, the aggregate value of the last 131 checks obtained by Rutberg.
 

 The dispositive issue on this appeal is whether the general rule applies, imposing the risk of loss upon the drawee bank for improper payment over a forged indorsement
 
 (see,
 
 UCC 1-201 [43]; 3-404 [1]), or whether the “fictitious payee” or “padded payroll” exception to the rule (UCC 3-405 [1] [c]) shifts the risk of loss to Guardian, the drawer on each purloined check
 
 (see, Getty Petroleum Corp. v American Express Travel Related Servs. Co.,
 
 90 NY2d 322, 325, 327;
 
 Merrill Lynch, Pierce, Fenner & Smith v Chemical Bank,
 
 57 NY2d 439, 441, 444). The fictitious payee exception provides in pertinent part:
 

 “(1) An indorsement by any person in the name of a named payee is effective if * * *
 

 
 *421
 
 “(c) an agent or employee of the maker or drawer has supplied him- with the name of the payee intending the latter to have no such interest” (UCC 3-405 [1] [c]).
 

 The following facts are not disputed by the parties. Baer had been a “general agent” of Guardian from 1959 to 1979, and even after 1979, Baer was not required to proceed through Guardian’s general agent, Arthur Cox Wilson Associates, in dealing with the insurance company. Between 1979 and 1989, Rutberg caused Guardian to issue hundreds of checks to its policyholders by telephoning the company and stating that policyowners had requested either a life insurance loan or policy dividend withdrawal. In fact, the owners of the policies had made no such requests. After Guardian sent the checks directly to Rutberg, he forged the payees’ indorsements and cashed the checks in various Philadelphia banks. Despite the forged indorsements, the money was transferred out of Guardian’s account at defendant’s bank.
 

 The checks were drawn by Guardian in the policyholders’ names solely at Rutberg’s oral request. Guardian took no steps to authenticate the requests by sending the checks directly to the registered address of the policyholder or notifying the policyholder that a check had been sent to Rutberg.
 

 Guardian brought this action against Chemical Bank seeking to recoup the monetary value of the checks dated within the Statute of Limitations period of June 5, 1986 to July 9, 1989. Supreme Court granted defendant’s motion for summary judgment (174 Mise 2d 837). On the basis of the uncontroverted facts, it held that Rutberg was Guardian’s agent for purposes of supplying the names of the payees. The Appellate Division affirmed for the reasons stated in Supreme Court’s opinion (257 AD2d 451). We likewise affirm.
 

 The provisions of article 3 of the Uniform Commercial Code ensure the ready negotiability of commercial paper. In addition, the provisions relating to check fraud further a policy of assigning loss based upon the relative responsibility of the parties “by establishing commercially sound rules designed to place the risk of loss attributable to fraud such as forged indorsements with the party best able to prevent them”
 
 (Getty Petroleum Corp. v American Express Travel Related Servs. Co., supra,
 
 at 326). As a general matter, article 3 shifts the risk of loss from the drawee to the drawer “in situations where the
 
 *422
 
 drawer is the party best able to prevent the loss”
 
 (id.,
 
 at 327;
 
 see also, Underpinning & Found. Constructors v Chase Manhattan Bank,
 
 46 NY2d 459, 468-469).
 

 The drawer should bear the loss occasioned by its own employee or agent “as a risk of his business enterprise,” because the drawer “is normally in a better position to prevent such forgeries by reasonable care in the selection or supervision of his employees [or agents], or, if he is not, is at least in a better position to cover the loss by fidelity insurance; and * * * the cost of such insurance is properly an expense of his business rather than of the business of the holder or drawee” (UCC 3-405, comment 4;
 
 see also, Prudential-Bache Sec. v Citibank,
 
 73 NY2d 263, 270;
 
 Merrill Lynch, Pierce, Fenner & Smith v Chemical Bank, supra,
 
 at 445).
 

 Since Rutberg was concededly not an employee of Guardian, liability will turn on whether Rutberg was acting as its agent. For that determination, we must “supplement” the UCC provisions with pre-Code “principles of law and equity * * * relative to * * * principal and agent” (UCC 1-103). In applying the common law in this particular commercial context, Anderson’s treatise on the Uniform Commercial Code explains that in order for UCC 3-405 (1) (c) to apply, the supplier of the payee information must be “under the control of the drawer as agent or employee” (6 Anderson, Uniform Commercial Code § 3-405:113, at 504 [1998 rev]). Thus, a person is not the drawer’s agent merely because the drawer relied upon that person to furnish the name of the payee.
 

 On the other hand, there need not be any formal agency agreement, and the loss will fall on the drawer irrespective of whether the supplier of the payee’s name is its general or special agent
 
 (id.,
 
 § 3-405:112, at 503). “The only significant element is whether the drawer had authorized the particular person to prepare the instrument in question or supply the information from which the commercial paper could be prepared”
 
 (id.,
 
 at 503). The fictitious payee provision applies “as long as the agent is in fact entrusted by the drawer company with taking the information” with regard to the payees, and on the basis of such information, the drawer “prepares checks, which it then entrusts to the agent for delivery to the payees, the ‘agent’ * * * then forging the names of the payees of the checks entrusted to the agent for delivery to the payees”
 
 (id.,
 
 at 503-504).
 

 The Restatement (Second) of Agency also supports the proposition that a broker who is not a general agent of an insur
 
 *423
 
 anee company may still be a special agent for the purpose of processing requests for policy loans and dividend withdrawals. “A special agent is an agent authorized to conduct a single transaction or a series of transactions not involving continuity of service” (Restatement [Second] of Agency §3 [2]). In addition, a principal and agent need not enter into a formal contract in order to create an agency relationship
 
 (id.,
 
 § 26, comment
 
 a).
 
 Moreover, even if an insurance broker is an agent for the policyholder, the broker could also act as the insurer’s agent so long as the dual agency does not involve any conflict of interest
 
 (see, id.,
 
 § 313, caveat; § 392).
 

 These general agency principles have been applied specifically to insurance brokers by the courts of Pennsylvania, where Rutberg requested and cashed the checks. “ ‘A broker may be found to have acted on behalf of the insurer * * * so as to be deemed the agent of the insurer and not the insured’ ” so long as there is “ ‘some evidence of an authorization, or some fact from which a fair inference of an authorization by the company might be deduced to make an insurance broker the agent of the company5 ”
 
 (Taylor v Crowe,
 
 444 Pa 471, 475, 282 A2d 682, 683-684, quoting Couch, Insurance § 25.95 [2d ed];
 
 see,
 
 Couch, Insurance § 45:5, at 45-17 [3d ed];
 
 Selected Risks Ins. Co. v Schwabenbauer,
 
 540 F Supp 22, 24-25 [ED Pa]). For example, even in the absence of a contract provision, where an insurer has authorized an insurance broker to collect premiums, the broker acts as the agent of the insurer in doing so, and payment of a premium to the broker binds the insurance company as if it had been paid directly to the company
 
 (see, Transcontinental Oil Co. v Atlas Assur. Co.,
 
 278 Pa 558, 563-564, 123 A 497, 499;
 
 Joyner v Harleysville Ins. Co.,
 
 393 Pa Super 386, 393-394, 574 A2d 664, 668). Likewise, where, as here, an insurance broker, entrusted by an insurer to deliver its checks to the policyholders, forges the payees’ indorsements and cashes the checks, the forger is “in a position comparable to that of a trusted agent or employee, whose similar activities would * * * preclude[ ] his principal from asserting the forgeries, under § 3-405 (1) (c)”
 
 (Thompson Maple Prods, v Citizens Natl. Bank,
 
 211 Pa Super 42, 50, n 5, 234 A2d 32, 36, n 5).
 

 This analysis is also consistent with the principles of law and equity applicable in New York, the only other State where the agency could have operated. An insurance broker sometimes acts as agent for the insurer so that the broker’s acts are treated as the acts of the insurance company itself
 
 (see, Bohlinger v Zanger,
 
 306 NY 228, 231-232;
 
 Arff v Star Fire Ins.
 
 
 *424
 

 Co.,
 
 125 NY 57, 64;
 
 Allen v German Am. Ins. Co.,
 
 123 NY 6, 16). In addition, an insurance broker can act as agent for both the policyholder and the insurer if doing so creates no conflict of interest
 
 (Rose Inn Corp. v National Union Fire Ins. Co.,
 
 229 App Div 349, 351,
 
 affd
 
 258 NY 51).
 

 We conclude that for purposes of these transactions, Rut-berg was an agent of Guardian under UCC 3-405 (1) (c). Long before he even began supplying the names of the payees to the insurance company on the checks at issue in this lawsuit, Guardian and Rutberg had an ongoing business understanding whereby Rutberg was responsible for processing requests for policy loans and dividend withdrawals. Under their well-established course of dealing, Rutberg was given authority to verify the identity of the policyholder and the bona fides of the request for a loan or withdrawal, to elicit the information necessary to process the request, to take receipt of the check and to deliver it to the policyholder. Rutberg, on the undisputed facts, performed all of the steps necessary to process requests for policy loans or dividend withdrawals except for the actual issuance of checks. The mutual agreement to proceed in this manner over the course of 10 years was surely intended to benefit Guardian, an insurance company from whom Baer and Rutberg earned commissions.
 

 As noted by Supreme Court, the result we reach here is consistent with the purposes of UCC 3-405 (1) (c), because Guardian was in a better position than defendant to prevent these forgeries. Guardian could have required authorization from the policyholders before issuing the checks, could have sent the checks directly to the payees or could have given them contemporaneous notice that it had issued checks made out to them. Guardian also might have prevented the forgeries through better supervision of Rutberg during the decade he was carrying out his fraudulent scheme.
 

 Nevertheless, Guardian argues that the brokerage agreements between its general agent, Arthur Cox Wilson Associates, and Baer and Rutberg establish that Rutberg was not Guardian’s agent. The agreements entered into by Baer and Rutberg stated: “It is expressly understood between the parties to this Agreement that the Broker represents the insured and does not represent the Company except as herein specified.” Whether an insurance broker acts as an agent, however, “is not determined by what he or she is called but is to be determined from what he or she does. In other words, his or her acts determine whether he or she is an agent. * * * [A]ny
 
 *425
 
 circumstance bearing on the allegiance of a broker in performing a specific act is relevant to this determination. The factors to consider * * * have been treated as controlling even when formal documents * * * may specify whether a person is an agent” (Couch, Insurance § 45:4, at 45-9 [3d ed];
 
 see, Transcontinental Oil Co. v Atlas Assur. Co., supra,
 
 278 Pa, at 563-564, 123 A, at 499;
 
 Arff v Star Fire Ins. Co., supra,
 
 at 67). Since the undisputed facts establish that Rutberg was “an agent * * * of the * * * drawer [who] supplied [it] with the name of the payee intending the latter to have no such interest” when he effected these insurance policy loan and dividend withdrawal transactions, his indorsements were effective under UCC 3-405 (1) (c) despite their having been forged.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Ciparick, Wesley and Rosenblatt concur.
 

 Order affirmed, with costs.