CITIGROUP, INC., Salomon Smith Barney Holdings Inc., and Salomon Inc., Plaintiffs,

v.

INDUSTRIAL RISK INSURERS, and Westport Insurance Corporation, Defendants,

and

7 World Trade Company, L.P., Intervenor.

No. 02 Civ. 7318(MGC).

United States District Court, S.D. New York.

Sept. 15, 2004.

Bruckmann & Victory, LLP, New York, By Mark F. Bruckmann, Patrick J. Maloney, Timothy G. Church, for Plaintiffs Citigroup, Inc., Salomon Smith Barney Holdings Inc., and Salomon Inc.

Robins, Kaplan, Miller & Ciresi LLP, Boston, MA, By Alan R. Miller, William E. Reed, Peter J. Barrett, Jr., for Defendants Industrial Risk Insurers and Westport Insurance Corporation.

Rosenberg & Estis, P.C., New York, By Luise A. Barrack, for Defendants Industrial Risk Insurers and Westport Insurance Corporation.

Friedman Kaplan Seiler & Adelman LLP, New York, By Eric Seiler, Robert S. Loigman, Katherine L. Pringle, Kent K. Anker, Michael A. Berg, for Intervenor 7 World Trade Company, L.P.

*AMENDED OPINION*

CEDARBAUM, Judge.

Citigroup, Inc., Salomon Smith Barney Holdings Inc., and Salomon Inc. (collectively "Citigroup"), filed this diversity action against Industrial Risk Insurers and Westport Insurance Corporation (collectively "IRI") to recover insurance proceeds for property it lost when 7 World Trade Center was demolished during the tragic events of September 11, 2001. Citigroup was a tenant in 7 World Trade Center. The insurance policy under which Citigroup sues was purchased by the building's operator and manager, 7 World Trade Company, L.P. ("7WTCLP"), through its agent, Silverstein Properties, Inc. ("Silverstein"). 7WTCLP was permitted to intervene in this action to protect its own interest in the insurance policy Citigroup sues under.[1] 7WTCLP and IRI have moved for summary judgment. Because Citigroup cannot show that the property for which it seeks recovery is insured under the policy or that it is an insured or loss payee, the motions are granted.

## BACKGROUND

The following facts are undisputed except where specifically noted. In 1988, Citigroup entered into a 20–year lease agreement ("Lease") with 7WTCLP to rent space at 7 World Trade Center. The Lease ended on December 5, 2001 when Citigroup chose to terminate it. During the term of the Lease, 7WTCLP, as the building's landlord, purchased insurance policies to cover the real and personal property at 7 World Trade Center. Citigroup was named as an additional insured and a loss payee on the 7WTCLP policies from 1988 through 1998 and as an additional insured from 1998 through 2000. In the spring of 2000, since its prior policy with a different insurer was about to expire, 7WTCLP negotiated its first policy with IRI for insurance coverage for the building from June 2000 through June 2001. This policy was renewed, and the renewed IRI policy was in effect on September 11, 2001 ("Policy"). The Policy states that it covers real property in which 7WTCLP has an insurable interest and personal property which it owns or uses. It further states that loss shall be adjusted with Silverstein and payable as directed by it. Citigroup is not a party to the Policy, nor is it named as an insured, additional insured or loss payee.

The Lease set out 7WTCLP's property interests in the building and classified all property within the Lease space as either "Landlord's Property" or "Tenant's Prop-

---

1. Because 7WTCLP was permitted to intervene for this sole purpose, Citigroup's motion to dismiss 7WTCLP's third and fourth counterclaims was granted at oral argument.

erty." Citigroup was permitted to make improvements to the space it rented. Any alterations or improvements installed by Citigroup that became part of the structure of the building were classified as Landlord's Property, while any fixtures which Citigroup could remove without compromising the building's structure were classified as Tenant's Property. According to the complaint, Citigroup spent in excess of $280,000,000 in improvements and betterments, which it claims it owned under the terms of the Lease. In many of the exhibits which contain communications between the parties, Citigroup refers to the property for which it seeks recovery as "improvements and betterments." Citigroup made clear at oral argument that it is the value of the improvements classified as "Tenant's Property" which it seeks to recover from IRI.

The Lease also set out the respective insurance obligations of Citigroup and 7WTCLP and required that Citigroup carry its own insurance on Tenant's Property. However, Citigroup contends that 7WTCLP was required to carry insurance on Tenant's Property, and argues that another Lease provision conflicts with this requirement and creates a question of fact as to the intention of the parties.

In addition, the Lease provided that in the event of damage or destruction, 7WTCLP had an obligation to repair or rebuild the building, including the improvements made by Citigroup which had become Landlord's Property. 7WTCLP was not required to repair or replace Tenant's Property. 7WTCLP was required to carry insurance covering Landlord's Property and Citigroup was required to pay as additional rent a portion of the premium paid by 7WTCLP to the insurer. In 2000 and 2001, respectively, Citigroup reimbursed 7WTCLP for $69,354 and $70,924 of premiums which 7WTCLP had paid to IRI.

On November 9, 2001, Citigroup sent a letter to 7WTCLP, with a copy to IRI, seeking to recover from 7WTCLP the value of its improvements and betterments, and asserting its interest in the insurance proceeds under 7WTCLP's Policy. 7WTCLP rejected the request to share its proceeds and IRI did not respond. With the December 5, 2001 termination of the Lease, any obligation 7WTCLP had to rebuild Citigroup's Landlord's Property improvements ended. On January 31, 2002, Citigroup sent a letter to IRI seeking confirmation that IRI had received the November notice of its claim. IRI did not respond.

On August 13, 2002, Citigroup submitted to IRI a claim for $288,000,000 for the destroyed improvements. On September 9, 2002, IRI sent a letter to Citigroup in which it stated that Citigroup is not named as a loss payee under the Policy, and has no right to payment under the Policy.

Citigroup commenced this action in September of 2002 and filed amended complaints on March 11, 2003 and July 2, 2004. The complaint alleges a single breach of contract claim against IRI and seeks insurance proceeds for the cost of the improvements and betterments Citigroup made to the property, including restitution for any proceeds paid to 7WTCLP. Although not named as an insured, additional insured, or loss payee in the Policy, Citigroup asserts that it is a loss payee and alleges that IRI breached the insurance contract by failing to recognize it as such and by refusing to pay its claim. It supports its claim with a certificate of insurance issued by Silverstein's insurance broker, Willis of New Jersey, Inc., ("Willis"). The certificate Willis issued names Citigroup as a loss payee "ATIMA," i.e. "as [its] interests may appear," with respect to the improvements and betterments insurance coverage.

## DISCUSSION

A motion for summary judgment shall be granted if the court "determines that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when the evidence is such that a reasonable finder of fact could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Richardson v. Coughlin,* 763 F.Supp. 1228, 1234 (S.D.N.Y.1991). In deciding whether a genuine issue exists, the court must "examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party." *In re Chateaugay Corp.,* 10 F.3d 944, 957 (2d Cir.1993). But "Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

In support of its motion for summary judgment, 7WTCLP makes three arguments. First, 7WTCLP argues that Citigroup cannot show that Tenant's Property is covered by the Policy. Thus, it asserts that the property which Citigroup claims it lost is not insured by the Policy. Second, it argues that Citigroup is not a loss payee under the Policy. Third, 7WTCLP argues that even if Citigroup were able to demonstrate an entitlement to loss payee status, it would be a loss payee "as [its] interests may appear," and Citigroup has no interest here because Tenant's Property is not insured by the Policy. 7WTCLP seeks a declaration that Citigroup does not have a legitimate claim to the IRI proceeds it seeks.

In support of its motion for summary judgment, IRI argues that Citigroup is not a loss payee. IRI asserts that neither IRI, nor any agent of IRI, issued a certificate of insurance naming Citigroup as a loss payee, nor did it have an obligation to do so. Moreover, it argues that under New York law, a certificate of insurance issued by an insured's broker does not establish coverage and is alone insufficient to prevent judgment as a matter of law in favor of the insurer. Thus, IRI argues that Citigroup has failed to raise any genuine issue of material fact.

As an intervenor, 7WTCLP also argues that to the extent this action seeks to divert insurance proceeds away from it, the action is barred by a Lease provision. The Lease's mutual release clause prohibited Citigroup from claiming against 7WTCLP for property that is covered by Citigroup's own insurance. Citigroup has recovered from its own insurers $285,100,000 of what it claims was a $300,000,000 loss for damage sustained during the September 11, 2001 attacks. However, Citigroup argues that its loss remains much more than $15,000,000 because it paid a $100,000 deductible and its wholly-owned captive insurer paid $50,000,000 of the $285,100,000 settlement. Moreover, Citigroup adds that the payment was the result of a negotiated settlement. Therefore, it is not possible to identify how much of the amount recovered was for damage to the 7 World Trade Center improvements and betterments. In the alternative, 7WTCLP argues that if Citigroup's claim is allowed to go forward, 7WTCLP is entitled to a declaration that the recovery should be reduced by Citigroup's recovery from its own insurers.

### I. *The Policy Does Not Cover Tenant's Property*

At oral argument, counsel for Citigroup clarified that the claim Citigroup submit-

ted to IRI was for the insured value of improvements classified in the Lease as Tenant's Property. This property was characterized by Citigroup's counsel as "anything that we can take out with us when we vacate the premises and the building doesn't fall down." 7WTCLP argues that Citigroup cannot recover the value of Tenant's Property for the simple reason that the Policy does not insure Tenant's Property. 7WTCLP will receive no insurance proceeds from IRI for the loss of Tenant's Property and neither can Citigroup. Moreover, 7WTCLP argues that this is consistent with the Lease provisions which required that Citigroup, rather than 7WTCLP, insure Tenant's Property.

## A. The Policy

[1] In construing an insurance policy "the court must examine 'the entire contract to determine its purpose and effect and the apparent intent of the parties.'" *Meyers & Sons v. Zurich Am. Ins. Group*, 74 N.Y.2d 298, 546 N.Y.S.2d 818, 545 N.E.2d 1206, 1208 (1989). Where the terms of the policy are clear and unambiguous, the court should look no further than the language of the policy. *Milbin Printing, Inc. v. Lumbermen's Mut. Cas. Ins. Co.*, 283 A.D.2d 467, 724 N.Y.S.2d 464, 466 (N.Y.App.Div.2001).

The Policy language is unambiguous and reads as follows:

A. If this policy covers REAL PROPERTY, it covers:

1. real property in which the Insured has an insurable interest; . . .

B. If this policy covers PERSONAL PROPERTY, it covers:

1. personal property owned by the Insured;

2. the Insured's interest in and the Insured's Liability for personal property of others, while in the custody of the Insured;

. . .

5. the Insured's use interest in Improvements and Betterments to buildings or structures.

7WTCLP is the "Insured" for purposes of the 7 World Trade Center building.

■ Because the scope of 7WTCLP's insurable interest determines the property that the Policy covers, it is necessary to decide whether 7WTCLP had an insurable interest in Tenant's Property. If 7WTCLP did not have such an interest, the Policy does not cover Tenant's Property and there can be no recovery for that property under the Policy. "In general a person has an insurable interest in the subject matter insured where he has such a relation or connection with, or concern in, such subject matter that he will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by the happening of the event insured against." *Scarola v. Ins. Co. of N. Am.*, 31 N.Y.2d 411, 340 N.Y.S.2d 630, 292 N.E.2d 776, 777 (1972). The Lease governs whether 7WTCLP had an insurable interest in Tenant's Property.

## B. The Lease

■ The Lease delineates what property 7WTCLP owned and what property it had responsibility to repair and rebuild during the term of the Lease. Citigroup was entitled to perform all the work it thought reasonably necessary to prepare the premises at 7 World Trade Center for occupancy and to make any alterations or improvements it deemed required. Lease §§ 1.05 & 14.01 (defining "Initial Work" and "Alterations"). Landlord's Property, or 7WTCLP's Property, is defined as:

[a]ll Initial Work and Alterations, *other than Tenant's Property* . . . Lease § 15.01 (emphasis added).

The definition of Tenant's Property, or Citigroup's Property, is:

> [a]ll movable partitions, special cabinet work, other business and trade fixtures, machinery and equipment, communications equipment and office equipment *which can be removed without jeopardizing the structural integrity of the Building* ... and all furniture, furnishings and other articles of movable personal property owned by Tenant and located in the Demised Property ... shall be and shall remain the property of Tenant and may be removed by it at any time during the Term ... Lease § 15.02 (emphasis added).

Thus, with the exception of removable fixtures which remained Tenant's Property, all other improvements became the property of 7WTCLP once installed.

Moreover, in the event of damage or destruction, 7WTCLP had, until Citigroup terminated the Lease, an obligation to repair or rebuild the building, including the Landlord's Property improvements made by Citigroup. Lease § 23.01. However, 7WTCLP was not required to repair or replace Tenant's Property. *Id.*[2]

7WTCLP, the insured, asserts that the Policy does not cover Tenant's Property since as landlord, the insured did not own the property, and did not have an obligation to replace it. By definition, Tenant's Property is owned by Citigroup and not 7WTCLP. Moreover, although 7WTCLP had substantial responsibilities to replace or rebuild damaged parts of the building, the Lease makes plain that this obligation did not extend to Tenant's Property. Lease § 23.01.

■ 7WTCLP did not own, have custody of, use, or have an obligation to replace Tenant's Property. Therefore, it had no insurable interest in Tenant's Property. Thus, whether or not Citigroup is a loss payee, the property it lost is not insured by IRI under the Policy on which Citigroup sues.

Citigroup argues that two ambiguities in the Lease raise genuine issues of material fact about whether Tenant's Property is insured under the Policy and preclude summary judgment.

### 1. *Reversionary Lease Provision*

Citigroup argues that the Policy covers Tenant's Property because a reversionary Lease provision gave 7WTCLP an insurable interest in it. The provision states that if Citigroup should abandon its Tenant's Property at the end of the Lease, that property could become the property of 7WTCLP. Lease § 15.05. Citigroup contends that this section gave 7WTCLP an "expectancy of economic advantage," sufficient to create an insurable interest and bring Tenant's Property within the Policy's coverage.

■ 7WTCLP responds that this remedial provision, which gave 7WTCLP the right to dispose of or retain Tenant's Property if Citigroup abandoned it, did not create an insurable interest. First, 7WTCLP argues that on its face, the provision only takes effect if Citigroup failed to meet its obligation to remove its property at its own expense at or prior to termination of the Lease. Lease § 15.04. The

---

**2.** "If the Building or the Demised Premises (including the Initial Work and any Alterations) shall be partially or totally damaged or destroyed by fire or other cause, then, whether or not the damage or destruction shall have resulted from the fault or neglect of Tenant ... (and if this lease shall not have been terminated ...), Landlord shall repair the damage and restore and rebuild the Building and/or the Demised Premises (including the Initial Work and any Alterations), at its expense, ... *provided, however,* that Landlord shall not be required to repair or replace any of Tenant's Property." Lease § 23.01 (emphasis in original).

Lease required Citigroup to remove Tenant's Property at or prior to the Lease termination unless 7WTCLP agreed in writing to allow some property to remain. *Id.* Second, Citigroup occupied the Lease space at the time of the loss, and, pursuant to the Lease, was in total control of Tenant's Property. Lease § 15.01. Therefore, it certainly had not abandoned its property.

7WTCLP's argument is persuasive. 7WTCLP had no "expectancy of economic advantage" in Tenant's Property on September 11, 2001. In the cases upon which Citigroup relies, the insured had an insurable interest at the time of the loss. The expectancy was not hypothetical, but in fact existed at the time of the loss. *See Scarola v. Ins. Co. of N. Am.,* 31 N.Y.2d 411, 340 N.Y.S.2d 630, 292 N.E.2d 776 (1972) (finding that the plaintiff had an insurable interest in a car which he paid value for without knowledge that it was stolen and which he was in possession of at the time of the loss, despite the fact that the rightful owner could emerge and assert superior title to the vehicle); *Deck v. Chautauqua Co. Patrons' Fire Relief Assoc.,* 73 Misc.2d 1048, 343 N.Y.S.2d 855 (N.Y.Sup.Ct.1973) (holding that buyers of real property who were in constructive possession of the property, had made a down payment, and had signed a contract to purchase at the time of the loss, had an insurable interest in the property despite a court determination two years after the loss that the agreement to purchase was not binding). Here, it is clear that on September 11, 2001, Citigroup had not made any plans to transfer the property to 7WTCLP and it certainly had not abandoned its property. Therefore, Tenant's Property is not insured under the Policy because 7WTCLP did not have an insurable interest in it at the time of the loss.

### 2. Obligation to Insure Tenant's Property

■ Secondly, Citigroup argues that the Lease contains conflicting language, some of which supports its argument that 7WTCLP was required to carry insurance on Tenant's Property. However, even if the Lease required this of 7WTCLP, it would not necessarily follow that the Policy insured Tenant's Property. In any event, the Lease did not so require. The Lease required Citigroup to carry its own insurance on Tenant's Property, Lease § 12.04(b), and made clear that 7WTCLP's insurance would not cover Tenant's Property. Lease § 23.06 ("Landlord will not carry insurance of any kind on Tenant's Property."). 7WTCLP's obligation was to carry insurance which would cover:

> installations constituting the Initial Work and any Alterations, it being the intention of the parties that Landlord's insurance shall cover and include all alterations, improvements, betterments, installations, fixtures and other property installed in or upon the Demised Premises by or on behalf of Tenant *constituting a part of the Demised Premises within the meaning of Sections 15.01 [Landlord's Property] and 15.02 [Tenant's Property]* of this lease. Lease § 12.09 (emphasis added).

Citigroup argues that there is a conflict between § 12.09 and sections 23.06 and 12.04(b).

Sections 12.04(b) and 23.06 required Citigroup to carry insurance on Tenant's Property and stated that 7WTCLP would not carry insurance on that property. Moreover, Citigroup did insure its property under its own policy. Nevertheless, Citigroup reads § 12.09 to say that 7WTCLP would carry insurance on both Landlord's and Tenant's Property. Citigroup misreads § 12.09. Nothing in the Lease supports reading the phrase "constituting a part of the Demised Premises

within the meaning of Sections 15.01 [Landlord's Property] and 15.02 [Tenant's Property]" as requiring 7WTCLP to have carried insurance on both types of property. To the contrary, the definition of "Demised Premises" states that it shall include the areas listed in § 2.02, "together with all fixtures and equipment which on the Initial Date or during the Term are thereto attached (*except Tenant's Property*)." Lease § 2.02 (emphasis added). Therefore, § 12.09 is consistent with § 2.02, which distinguishes Tenant's Property from the Demised Premises which 7WTCLP was required to insure. Section 12.09 is also consistent with sections 12.04(b) and 23.06.

### 3. *Citigroup's Additional Arguments*

Citigroup makes several additional arguments against summary judgment. These arguments are based on various arrangements and communications between 7WTCLP and Citigroup as distinguished from the language of the Lease and the Policy. They are without merit.

First, Citigroup argues that IRI insured all the property consisting of improvements and betterments and not merely a specific interest in that property. However, Citigroup's position is directly contrary to the unambiguous language of the Policy which states that it covers property in which 7WTCLP has an insurable interest.

■ Secondly, counsel for 7WTCLP stated at oral argument that Citigroup did have a limited interest in the proceeds of Landlord's Property. In the event of damage or destruction, 7WTCLP had an obligation to repair or rebuild the building including those Citigroup improvements

deemed Landlord's Property. Lease § 23.01. If, while the Lease was still in effect, 7WTCLP failed to rebuild as the Lease required, 7WTCLP's counsel agreed that Citigroup could have brought an action based on this Lease provision to compel 7WTCLP to comply or to seek the insurance proceeds for rebuilding Landlord's Property. However, no similar right existed for improvements and betterments deemed Tenant's Property because 7WTCLP had no similar obligation to rebuild Tenant's Property. Lease §§ 23.01 & 23.06. Thus, 7WTCLP had no interest in Tenant's Property and it is not covered by the Policy.

■ Similarly, Citigroup's reimbursement of 7WTCLP for a portion of the premiums which 7WTCLP paid to IRI does not alter the property covered by the Policy. Section 12.09 of the Lease states that the reimbursement was a condition of 7WTCLP's obligation to carry insurance on those Citigroup improvements which became Landlord's Property. Citigroup never paid money to IRI and the payment arrangements between 7WTCLP and Citigroup cannot expand the coverage of the Policy.

Lastly, Citigroup's recovery under prior non-IRI policies does not show that it is entitled to recover under the Policy. These policies were neither issued by IRI nor operative on September 11, 2001. Moreover, Citigroup was named as an additional insured and a loss payee in these prior policies. Furthermore, the three payments by prior insurers all appear to be for damage to improvements and betterments which constituted Landlord's Property.[3] Therefore, the prior insurance

---

**3.** In 1991, a collapse occurred in a closet which caused damage. 7WTCLP was paid by its insurer, Protection Mutual Insurance Co., and a check was forwarded to Citigroup. In March of 1994, Protection Mutual paid Citigroup insurance proceeds for a loss caused by fire. Section 12.09 of the Lease makes clear

that it is Landlord's obligation to carry fire insurance. In March of 1993, Hartford Insurance Co. paid Citigroup for damage caused by a pipe freeze and specifically noted that it paid the claim because a majority of the costs were related to "permanent im-

payments do not show that Citigroup is entitled to recover from IRI for the loss of Tenant's Property.

## II. *Citigroup is Not a Loss Payee*

█ Because the Policy does not cover the property for which it seeks recovery, Citigroup cannot save its claim, whether or not it was, or should have been, a loss payee. However, even if the Policy coverage were otherwise, Citigroup has failed to raise an issue of fact as to whether it is to be treated as a loss payee.

Citigroup was not listed as a loss payee in the Policy and has not produced evidence that IRI issued any certificate of insurance to 7WTCLP or Silverstein or Citigroup naming Citigroup as such. Nevertheless, Citigroup relies on the certificate of insurance issued by Willis, Silverstein's broker, which names it as a loss payee.

█ When a certificate of insurance issued to a third party expressly states that it does not change the policy listed on the certificate, the language of the policy controls. *See Taylor v. Kinsella*, 742 F.2d 709 (2d Cir.1984) ("This rule accords with the widely recognized principle that the intent to incorporate additional papers into an insurance policy must be plainly manifest."); *First Financial Ins. Co. v. Jetco Contracting Corp.*, No. 99 Civ. 8664, 2000 WL 1013945, *6 (S.D.N.Y.2000). "A certificate of insurance is merely evidence of a contract for insurance ... On summary judgment, a certificate may be sufficient to raise an issue of fact, especially where additional factors exist favoring coverage,

but it is not sufficient standing alone." *Id.* (quoting *Horn Maintenance Corp. v. Aetna Cas. & Sur. Co.*, 225 A.D.2d 443, 639 N.Y.S.2d 355, 356 (N.Y.App.Div.1996)); *see also American Ref-Fuel Co. of Hempstead v. Res. Recycling, Inc.*, 248 A.D.2d 420, 671 N.Y.S.2d 93 (N.Y.App.Div.1998) (finding summary judgment particularly appropriate where the third party who was not designated in the policy proffers only a certificate of insurance).

█ Moreover, a certificate of insurance issued by a broker does not favor coverage because a broker works for and is a representative of the insured, and does not have authority to bind the insurer. *See, e.g., McKenzie v. N.J. Transit Rail Operations*, 772 F.Supp. 146, 149 (S.D.N.Y. 1991) (citing *Armada Supply Inc. v. Wright*, 858 F.2d 842, 851 (2d Cir.1988)); *First Financial*, 2000 WL 1013945 at *6. *Cf. Bucon, Inc. v. Pennsylvania Mfg. Assoc. Ins. Co.*, 151 A.D.2d 207, 547 N.Y.S.2d 925 (N.Y.App.Div.1989) (an issue of material fact sufficient to preclude summary judgment existed where the insurer had issued a certificate of insurance naming the plaintiff as an additional insured, a contractual policy endorsement existed, and the insurer had disclaimed liability on a ground consistent with coverage).[4] A broker can only be viewed as being the insurer's agent when there is evidence that a broker acted with authority granted by the insurer. *First Financial*, 2000 WL 1013945 at *6 (citing *Guardian Life Ins. Co. of Am. v. Chemical Bank*, 94 N.Y.2d 418, 705 N.Y.S.2d 553, 727 N.E.2d 111 (2000)).

---

provements" which are covered by the landlord.

**4.** Citigroup argues that these cases are inapposite because the court is examining liability policies as opposed to property policies, like the Policy at issue. 7WTCLP points out that the certificate Willis issued is a "Certificate of Liability Insurance." However, it is clear

that a certificate of insurance issued with regard to a property policy does not give the certificate holder any greater rights. *See, e.g., Kaufman v. Puritan Ins. Co.*, 126 A.D.2d 702, 511 N.Y.S.2d 307 (N.Y.App.Div.1987); *Benjamin Shapiro Realty Co. v. Kemper Nat'l Ins. Cos.*, 303 A.D.2d 245, 756 N.Y.S.2d 45 (N.Y.App.Div.2003).

■ Furthermore, where a third party is not covered by the insurance policy, it cannot argue based on the certificate of insurance that the insurer is estopped from denying coverage. *American Ref-Fuel Co.*, 671 N.Y.S.2d at 96 (noting that "the doctrine of estoppel may not be invoked to create coverage where none exists under the policy"); *see First Financial*, 2000 WL 1013945 at *6 (noting that the only exception to this rule is when the insurer's actions caused the third party to rely to its detriment on coverage).

■ The certificate issued by Willis names Citigroup as a loss payee "as [its] interests may appear," and states:

**THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLD-ER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW** (emphasis in original).

Thus, the Policy, which does not name Citigroup as a loss payee, is the controlling document.

Moreover, the certificate of insurance here was issued by Willis, a broker of the insured, not of IRI, the insurer. Edmund Harvey, a Willis insurance broker, testified at his deposition that as an insurance broker, Willis' obligation was to policyholders, not to insurers, and that neither he, nor anyone else at Willis, had authorization to alter the coverage as provided under the Policy. Moreover, Citigroup has presented no evidence that IRI sanctioned Willis' issuance of the certificate.

■ Nevertheless, Citigroup relies on the fact that in connection with the renewal of the 2000–2001 Policy, Willis, acting on behalf of Silverstein, sent a letter to IRI and attached copies of the renewed certificates of insurance it had issued, including the Citigroup certificate, and re-quested that IRI reissue the certificates on its own forms "if necessary." In his deposition testimony, Peter DiPietro, the IRI underwriter who wrote the insurance policy on 7 World Trade Center, stated that this letter from Willis to IRI would "get[ ] the ball started." However, the ball was never picked up. Richard A. Boulds, an IRI account manager, testified at his deposition that IRI did not issue any endorsement to the Policy or reissue the certificate on its own form. Thus, the undisputed evidence shows that Citigroup was never added to the Policy and IRI never issued a certificate of insurance naming Citigroup. Moreover, Citigroup's argument that IRI should be estopped from denying coverage because IRI received the loss payee request from Willis and the Policy states that loss is to be adjusted by the insured is unpersuasive. The doctrine of estoppel cannot be used to create coverage in the absence of any evidence that IRI assured Citigroup that it would be a loss payee.

Finally, contrary to Citigroup's argument, *Rosalie Estates, Inc. v. Colonia Insurance Co.*, 227 A.D.2d 335, 643 N.Y.S.2d 59 (N.Y.App.Div.1996), does not support the position that the Willis certificate precludes summary judgment. In that case, the plaintiff was added as an additional insured under the policy's general liability coverage, but was not added as one for property damage coverage. *Id.* at 61. The court was concerned that the failure to include the plaintiff as an additional insured on the property section was a scrivener's error because there was sufficient evidence to indicate that the insurer intended to add the plaintiff as an additional insured to both sections. *Id.* The court found that if the insurer had been aware of the certificate of insurance naming the plaintiff as an additional insured as to both, it would be some evidence that the insurer made a scrivener's error. *Id.* at 62. Thus, the court denied summary judg-

ment and permitted further discovery. *Id.* However, in this case, Citigroup has presented no evidence that IRI intended to name it as a loss payee. Citigroup instead argues that IRI had no reason to refuse loss payee status because: (1) IRI had the "capacity" to insure 7 World Trade Center, (2) Citigroup's tenancy would not have changed the risk insured or the premium paid, and (3) IRI did not "reject" the certificate of insurance issued by Willis. Citigroup has failed to proffer any evidence that IRI manifested an intent to comply with the broker's request. Therefore, contrary to Citigroup's contention, IRI's receipt of a certificate of insurance issued by Willis does not create an issue of material fact sufficient to preclude summary judgment.

Similarly, even if Citigroup had properly alleged mistake in its complaint, it is unable to show that IRI made a mistake by not listing it as a loss payee. *Rosalie Estates* is inapposite because Citigroup has proffered no evidence that IRI intended to make it a loss payee.

Additionally, the fact that prior insurers listed Citigroup as a loss payee does not obligate IRI to agree. Moreover, that there were discussions between Willis and IRI about adding Citigroup as an additional insured to an earlier IRI policy does not raise a genuine issue of fact about whether Citigroup is a loss payee on the applicable Policy.

### III. *Equitable Lien*

 Citigroup also argues that IRI's failure to list it as a loss payee is immaterial because it has an equitable lien on the insurance proceeds. However, even if Citigroup's equitable lien theory had been properly raised in its complaint, it is unpersuasive because the Policy does not cover Tenant's Property. Moreover, in the cases on which Citigroup relies, the third party had a security agreement with the insured which obligated the insured to name the third party as a policy beneficiary and the insurer was aware of the agreement. *Rosario–Paolo, Inc. v. C & M Pizza Restaurant, Inc.,* 84 N.Y.2d 379, 618 N.Y.S.2d 766, 643 N.E.2d 85 (1994) (finding that the defendant's obligation to insure the premises for the plaintiff's benefit pursuant to the security agreement, gave the plaintiff an equitable lien on any proceeds up to the unpaid portion of the property's purchase price and that such lien was not extinguished by the failure to be listed on the policy). In that situation, the insurer's obligation is to preserve the proceeds for the rightful beneficiary. *Id. Cf. Badillo v. Tower Ins. Co.,* 92 N.Y.2d 790, 686 N.Y.S.2d 363, 709 N.E.2d 104, 105 (1999) (distinguishing *Rosario–Paolo* and holding that the plaintiff was not entitled to the insurance proceeds because the insurer did not have actual notice of the security agreement); *accord Stacey L.A. Furs, Inc. v. Lichtenstein,* 237 A.D.2d 507, 655 N.Y.S.2d 90, 92 (N.Y.App.Div.1997).

Citigroup stresses that it submitted a claim to IRI before the proceeds were paid and that should have put IRI on actual notice. However, unlike *Rosario–Paolo,* there is no security agreement. Moreover, as described above, the Lease, which is the only agreement between 7WTCLP and Citigroup, specifically states that 7WTCLP would not carry insurance on Tenant's Property and requires Citigroup to carry its own insurance. Accordingly, Citigroup does not have an equitable lien on the proceeds.

### CONCLUSION

For the foregoing reasons, the motions for summary judgment are granted.

SO ORDERED.