[850 NYS2d 435]

Edward Cohen et al., Appellants, v Memorial Sloan-Kettering Cancer Center et al., Respondents.

First Department, February 5, 2008

**APPEARANCES OF COUNSEL**

*David P. Kownacki*, New York City, for appellants.

*Kopff, Nardelli & Dopf LLP*, New York City (*Martin B. Adams* of counsel), for respondents.

**OPINION OF THE COURT**

SAXE, J.

Labor Law § 240 (1) requires that adequate safety devices be provided to workers for tasks that "entail a significant risk . . . because of the relative elevation at which the task must be performed" (*see Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 514 [1991]). The statute directs that the devices must be "so constructed, placed and operated as to give proper protection to a person so employed" (Labor Law § 240 [1]), explicitly recognizing that a defect in a device may derive not from its construction but from the way in which it is placed at the site. If a worker at an elevated height is injured in a fall which is proximately caused by the inadequacy of the provided device or its placement, the owner and contractor are subject to absolute liability under the statute (*Bland v Manocherian*, 66 NY2d 452, 460 [1985]). Moreover, the provision requires that the device made available must not only allow the worker to safely perform the work at an elevation without falling (*id.*), but also to safely ascend to the necessary height, and safely descend back to the floor thereafter (*see Potter v NYC Partnership Hous. Dev. Fund Co., Inc.*, 13 AD3d 83, 84 [2004]). We hold that plaintiffs should have been awarded summary judgment on their cause of action under Labor Law § 240 (1), because the safety device made available to perform the assigned task at an elevation could not be properly placed at that spot in a position that would provide adequate protection to the worker from the risk of falling when he descended the ladder.

Plaintiff Edward Cohen was employed with an electrical subcontractor on a renovation project at defendant Memorial Sloan-Kettering Cancer Center, for which project defendant HRH Construction was the construction manager. At the time in question, plaintiff was assigned the task of installing metal racks in a particular room's ceiling. A six-foot A-frame ladder was made available for his use. However, as his testimony

established, the ladder was inadequate for the task at one spot in the room, not because it was too short or lacked appropriate parts, but because when the ladder was placed in the only possible position at the location, its first rung was completely blocked and inaccessible. A metal rod protruded from a piece of cast iron installed in the wall as a plumber's roughing for a toilet to be installed subsequently. Plaintiff was therefore forced to step directly from the second rung to the floor when descending. Moreover, another cast iron rod protruded a few inches behind the ladder's second rung.

The accident occurred when plaintiff began to step down to the floor from the second rung with his right foot; his left foot got caught between the second rung and the rod behind it, his knee twisted and, while grabbing his knee, he fell to the concrete floor.

Plaintiffs here made the requisite prima facie showing for section 240 (1) liability on the part of the owner and general contractor. They established that the device made available to plaintiff to perform the assigned task was inadequate to safely perform a portion of the work, since the provided ladder did not permit him to safely ascend and descend. In opposing the application, defendants failed to offer any evidence that would justify concluding that an adequate safety device had in fact been made available, that the accident was caused solely by plaintiff's misuse of an adequate safety device, or that the accident was unrelated to the lack of an adequate safety device.

Defendants argue that summary judgment on the Labor Law § 240 (1) claim was properly denied by the motion court, relying on case law that "[w]here an employee is injured in a fall from a ladder, which is not otherwise shown to be defective, the issue of whether the ladder provided the employee with the proper protection required under this statute is a question of fact for the jury" (*Taglioni v Harbor Cove Assoc.*, 308 AD2d 441, 442 [2003]).

However, while it is appropriate to deny summary judgment where there is an issue of fact as to whether a plaintiff's fall was *caused by* a failure to provide an adequate safety device (*see e.g. id.; Chan v Bed Bath & Beyond*, 284 AD2d 290 [2001]), there is nothing here to contradict plaintiff's showing that his fall was proximately caused by his inability to step down one rung at a time because of the absence of a safety device which would allow his safe descent to the floor.

Defendants, and our dissenting colleagues, emphasize that there was no defect in the ladder. However, that is not the

nature of the claimed violation of Labor Law § 240 (1). Defendants had the statutory obligation to provide a safety device *appropriate to the task*. Just as it would be a violation of section 240 (1) to provide a worker with a *nondefective* six-foot ladder in circumstances where a 10-foot ladder was necessary to perform the assigned task, plaintiff here established that the device he was provided, though not itself defective, and sufficient for the task at other portions of the work site, was *insufficient to permit him to safely perform the elevated task* at that particular part of the work site.

Of course, if adequate safety devices were made available to the worker, but the worker either does not use or misuses them, there will be no liability (*see Robinson v East Med. Ctr., LP*, 6 NY3d 550, 554 [2006]); notably, however, "[t]he mere presence of ladders or safety belts somewhere at the worksite" is not enough to establish that the worker was provided with an appropriate device (*Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 524 [1985]). It is suggested that some other type of device, such as some sort of scaffold, would have served the purpose at that spot. Yet, defendants did not offer any evidence establishing that any more appropriate equipment was made available to plaintiff for the task, or even that—contrary to plaintiff's assertion—the ladder could have been placed in a manner that would have allowed plaintiff to safely perform the work. Nor does the dissent satisfactorily explain its rejection of plaintiff's suggestion that a device such as a scaffold set up in that portion of the work site would have provided a safe means of performing the work and descending thereafter.

There was no basis to conclude, as defendants suggest, that the sole cause of the accident was plaintiff's own negligence, either in choosing to use that ladder, choosing to place it as he did, or choosing to use it in the manner that he did. To so conclude would turn on its head the purpose of section 240 (1), which is "to protect workers by placing ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor, instead of on workers, who are scarcely in a position to protect themselves from accident" (*Rocovich v Consolidated Edison Co.*, 78 NY2d at 513 [citations and internal quotation marks omitted]).

Defendants, and our dissenting colleagues, also urge that plaintiff's injury resulted from a separate hazard unrelated to the danger that brought about the need for the ladder in the

first instance (citing *Nieves v Five Boro A.C. & Refrig. Corp.*, 93 NY2d 914 [1999]). In *Nieves*, the plaintiff's misstep was caused by something *on the ground*, not something he was forced to encounter in the course of making his descent. The hazard presented by his working at an elevation was no longer present once he was on the ground. Similarly, in *Melber v 6333 Main St.* (91 NY2d 759, 764 [1998]), the plaintiff tripped on a conduit protruding from an unfinished floor, and the Court observed that the hazard was not one that section 240 (1) protected against.

Here, in contrast, the hazard was encountered by plaintiff in the course of his descent. The statute directs the owner and contractor to provide safety devices in order to ensure that the worker can safely perform his task at an elevation, and safely descend thereafter; therefore the failure of the provided safety device to give proper protection to allow him to descend without the interference of the dangerous protruding cast iron rods constituted a clear violation of the statute.

Admittedly, there are many situations in which a worker is injured, even when working at a height, and section 240 (1) nevertheless is inapplicable. For example, in *Ross v Curtis-Palmer Hydro-Elec. Co.* (81 NY2d 494 [1993]), the injury did not result from the failure to protect the worker from the elevation-related risk, but rather, "flowed from a deficiency in the device that was wholly unrelated to the hazard [of elevation]" (*id.* at 501 [citation and internal quotation marks omitted]), in that the placement of a raised platform forced the plaintiff to work in a contorted position, causing him injury. Or, in *Rocovich v Consolidated Edison Co.* (78 NY2d at 514-515), the employee who was working on a roof slipped, and his foot and ankle fell into a 12-inch trough on the roof which contained heated industrial oil, the Court explained that the hazard presented by the trough did not entail the type of elevation-related risk which called for any of the protective devices of the types listed in the statute. Indeed, none of the listed devices would have been of any assistance to the plaintiff in *Rocovich*.

Here, however, plaintiff was caused to fall due to the lack of a proper device, amenable to placement in that spot in a manner that would permit him to avoid the hazard in the course of his descent. Because plaintiff here demonstrated that the ladder provided for him to perform his assigned work was not adequate to the task in the assigned location, and defendants failed to make a showing that the safety device they provided was ad-

equate to the task, or that plaintiff misused or failed to use it, the motion court should have granted plaintiffs' cross motion for summary judgment on their claim under Labor Law § 240 (1).

The motion court properly found that neither Industrial Code (12 NYCRR) § 23-1.7 (e) (1) nor any other section of the Code applies to this set of facts and properly dismissed the cause of action under Labor Law § 241 (6).

Accordingly, the order of the Supreme Court, New York County (Walter B. Tolub, J.), entered January 5, 2007, which granted defendants' motion for summary judgment dismissing the cause of action under Labor Law § 241 (6) and denied plaintiffs' cross motion for summary judgment on their claim under section 240 (1), should be modified, on the law, and plaintiffs' cross motion for summary judgment on their Labor Law § 240 (1) claim granted, and as so modified, affirmed, without costs.

FRIEDMAN, J. (dissenting in part). In *Nieves v Five Boro A.C. & Refrig. Corp.* (256 AD2d 106 [1998], *revd* 93 NY2d 914 [1999]), Supreme Court granted the plaintiff summary judgment on his claim under Labor Law § 240 (1). On appeal to this Court, we modified to deny the plaintiff summary judgment, but affirmed the denial of summary judgment to the defendant. The defendant appealed to the Court of Appeals, which reversed our decision and dismissed the Labor Law § 240 (1) claim. As explained hereinafter, the facts of *Nieves* virtually mirror the facts of this case, and the principle for which *Nieves* stands mandates a similar result here.

I submit that, in resolving this appeal, we are duty-bound, as an intermediate appellate court, to follow the binding precedent of *Nieves*, as decided by the state's highest court. I therefore respectfully dissent from the majority's determination insofar as it grants plaintiffs summary judgment as to liability on the Labor Law § 240 (1) cause of action. Consistent with *Nieves*, I would, on a search of the record, dismiss that claim.

In *Nieves*, the Court of Appeals made it abundantly clear that, even if an accident befalls a worker during the use of an elevation-related safety device of a kind listed in Labor Law § 240 (1), liability under the statute does not follow if the injury "result[ed] from a separate hazard wholly unrelated to the risk which brought about the need for the safety device in the first instance" (93 NY2d at 916). To similar effect, the Court of Appeals stated in another case that no claim under section 240 (1)

arises from a mishap resulting from a risk that "[t]he protective equipment envisioned by the statute is simply not designed to avert" (*Melber v 6333 Main St.*, 91 NY2d 759, 763 [1998]). As previously indicated, it is my view that this principle requires the dismissal of the instant Labor Law § 240 (1) claim, based on a fall that resulted from plaintiff's catching his foot between the second rung of a ladder (two feet above the floor) and a metal rod that protruded horizontally, parallel to the ladder's rung, from an adjacent unfinished wall. The facts of this case are described in greater detail in the following two paragraphs.

In the course of a project to add a new floor to defendant medical center's building, plaintiff Edward Cohen, an employee of an electrical subcontractor, was assigned to install pipe racks on the new floor's unfinished ceiling. According to plaintiff, the ceiling was eight to nine feet high. Plaintiff, who is six feet tall, used a six-foot A-frame ladder to perform this job; he moved the ladder to a new location to hang each pipe rack. To hang a pipe rack in the corner of what was to become a bathroom, plaintiff positioned his ladder adjacent to the cast-iron "roughing" for a toilet mounted on the metal partitions that constituted the wall at that stage of the work. Four metal rods protruded from the roughing; one rod blocked the first rung of the ladder, and another was directly behind the second rung. According to plaintiff, he had to place the ladder in this spot, notwithstanding the protrusion of the rods, because "[t]his was the only way to position the ladder so that [he] could install the rack where it needed to be."

In ascending the ladder after he placed it by the toilet roughing, plaintiff successfully avoided the rod blocking the first rung by stepping directly from the floor onto the second rung. He then spent 20 minutes on the ladder installing the pipe rack, without incident. On the way down the ladder after completing the installation, plaintiff attempted to step with his right foot from the second rung directly to the floor approximately two feet below in order to avoid the protruding rod that blocked the first rung. As he lifted his right foot, plaintiff sensed that his left foot had become "jammed" between the second rung and the rod behind it. With his right foot in the air, plaintiff's weight shifted to the right while his left foot was "jammed" in place, and he felt his left knee twist painfully. He grabbed for his left knee, lost his balance, and fell to the floor on the right side of his body. Plaintiff alleges that he suffered serious injuries to his left knee as a result of this incident.

The injured plaintiff and his wife (suing derivatively) commenced this action against the medical center and the project's construction manager, asserting, in pertinent part, causes of action under Labor Law § 240 (1) and § 241 (6). After discovery, defendants moved for summary judgment dismissing the complaint, and plaintiffs cross-moved for partial summary judgment as to liability on the claim under Labor Law § 240 (1). The motion court granted the motion to the extent of dismissing the claim under Labor Law § 241 (6), and denied the cross motion.

On plaintiffs' appeal, the majority modifies to grant them summary judgment as to liability under Labor Law § 240 (1). For the reasons discussed below, however, I believe, as previously indicated, that Supreme Court correctly denied plaintiffs' cross motion for summary judgment as to liability, and, moreover, that we should modify to grant defendants summary judgment dismissing the Labor Law § 240 (1) claim, in the exercise of our power to search the record on the appeal from the denial of that cross motion (see CPLR 3212 [b]; Merritt Hill Vineyards v Windy Hgts. Vineyard, 61 NY2d 106, 110-112 [1984]).[1]

In considering whether any basis for liability under Labor Law § 240 (1) exists on this record, it is essential to bear in mind that there is no evidence that plaintiff's ladder was in anything less than proper working order. Plaintiff does not allege that the ladder shook, moved, collapsed or malfunctioned in any way in this unfortunate incident. Indeed, when asked at his deposition whether "the ladder move[d] in any manner" during the incident, plaintiff answered: "The best of my knowledge, I don't think that ladder ever budged." Thus, the accident occurred entirely because plaintiff's left foot became jammed between one of the protruding rods and the second rung of the ladder, not because of any fault or failure in the ladder itself. Under these circumstances, not only is plaintiff not entitled to summary judgment as to liability under Labor Law § 240 (1), there is no basis for imposing liability under that statute.

The Court of Appeals has instructed us many times that the "extraordinary protections of Labor Law § 240 (1) extend only to a narrow class of special hazards, and do 'not encompass *any and all* perils that may be connected in some tangential way with the effects of gravity' " (*Nieves*, 93 NY2d at 915-916, quot-

---

**1.** I concur in the majority's affirmance of the dismissal of the Labor Law § 241 (6) claim.

ing *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993]). Specifically, section 240 (1) covers only those "elevation-related risk[s] which call[ ] for . . . protective devices of the types listed in [the statute]" (*Bond v York Hunter Constr.*, 95 NY2d 883, 884-885 [2000]). As stated in another Court of Appeals decision, "while the hazards [covered by section 240 (1)] are not spelled out in the statute, they can be inferred from the 'protective means' set forth in the statute 'for the hazards' avoidance'—scaffolding, hoists, stays, ladders and so forth" (*Toefer v Long Is. R.R.*, 4 NY3d 399, 406 [2005], quoting *Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513 [1991]). Thus, "where a plaintiff 'was exposed to the usual and ordinary dangers of a construction site, and not the extraordinary elevation risks envisioned by Labor Law § 240 (1),' the plaintiff cannot recover under the statute" (*Toefer*, 4 NY3d at 407, quoting *Rodriguez v Margaret Tietz Ctr. for Nursing Care*, 84 NY2d 841, 843 [1994]).

Consistent with the foregoing principles, the Court of Appeals has held that, even if an injury was incurred during the use of a safety device of a kind listed in Labor Law § 240 (1), statutory liability does not attach if the injury "result[ed] from a separate hazard wholly unrelated to the risk which brought about the need for the safety device in the first instance" (*Nieves*, 93 NY2d at 916, citing *Ross* and *Melber*). In *Nieves*, for example, as the plaintiff stepped from a ladder onto a floor covered by a drop cloth, he tripped over a concealed portable light located underneath the cloth (93 NY2d at 915). The Court of Appeals, reversing this Court (256 AD2d 106 [1998]), unanimously held that no liability under section 240 (1) existed under these facts, reasoning as follows:

> "Here, the ladder was effective in preventing plaintiff from falling during performance of the ceiling sprinkler installation. Thus, the core objective of section 240 (1) was met. As in *Ross* and *Melber*, plaintiff's injury resulted from a separate hazard wholly unrelated to the danger that brought about the need for the ladder in the first instance—an unnoticed or concealed object on the floor. There was no evidence of any defective condition of the ladder or instability in its placement. Hence, the risk to plaintiff was not the type of extraordinary peril section 240 (1) was designed to prevent. Rather, his injuries were the result of the usual and ordinary

dangers at a construction site. Therefore, plaintiff is not entitled to Labor Law § 240 (1) protection because no true elevation-related risk was involved here." (93 NY2d at 916.)

Similarly, in *Melber*, the plaintiff stood on 42-inch stilts to install metal studs in the top of a drywall. While walking on the stilts down a corridor to obtain a tool, "he tripped over [an] electrical conduit protruding from the unfinished floor and fell to the ground" (91 NY2d at 761). Up to that point, the stilts had "supported him without incident" (*id.*). Under these facts, the Court of Appeals unanimously held that the *Melber* plaintiff had no claim under Labor Law § 240 (1), since the protruding conduit was not "a risk that can be avoided by proper placement or utilization of one of the devices listed in [the statute]" (*id.* at 763). "The protective equipment envisioned by the statute," the Court continued, "is simply not designed to avert the hazard plaintiff encountered here" (*id.*). The Court further noted that the plaintiff's injury had not resulted from any failure of the stilts to support him, but from a hazard (the protruding conduit) that was " 'wholly unrelated to the hazard which brought about [the] need [for the stilts] in the first instance' " (*id.* at 764, quoting *Ross*, 81 NY2d at 501 [holding that a welder who suffered back strain from having to work in a contorted position on a platform above a deep shaft had no claim under Labor Law § 240 (1), since the platform, even if defectively designed insofar as it required the work to be performed in a contorted position, "serve(d) the core objective of Labor Law § 240 (1)—preventing (the welder) from falling down the shaft"]; *see also Meng Sing Chang v Homewell Owner's Corp.*, 38 AD3d 625 [2007] [dismissing Labor Law § 240 (1) claim of plaintiff who alleged that he fell when the metal grating supporting the ladder he was using collapsed]).

Here, as in *Nieves*, "[t]here was no evidence of any defective condition of the ladder or instability in its placement" (93 NY2d at 916); as plaintiff testified, the ladder he was using "[n]ever budged" during the incident. Plaintiff's mishap occurred, not due to the ladder's failing to support him or its moving in any way, but because of the protrusion of the metal rods adjacent to the ladder's first and second rungs. While the rods may have posed a certain risk, that risk—like the risks posed by the cloth-covered object beside the ladder in *Nieves*, and by the conduit protruding from the unfinished floor in *Melber*—was not necessarily elevation-related, since the rods would have posed a risk

to any person working in that particular location, whether or not the work was performed at an elevation. Therefore, the protruding rods exposed plaintiff only " 'to the usual and ordinary dangers of a construction site, and not the extraordinary elevation risks envisioned by Labor Law § 240 (1)' " (*Toefer*, 4 NY3d at 407, quoting *Rodriguez*, 84 NY2d at 843). Accordingly, because, under the facts alleged by the injured plaintiff himself, "no true elevation-related risk was involved here" (*Nieves*, 93 NY2d at 916), no basis exists for imposing liability on defendants under Labor Law § 240 (1).

The majority reaches the opposite conclusion, claiming that plaintiff's ladder, "though not itself defective, . . . was *insufficient to permit him to safely perform the elevated task* at th[e] particular part of the work site" where the mishap occurred. The record establishes, however, that the ladder in question enabled plaintiff to perform his job at the required elevation in safety, thus rendering inapt the majority's analogy to a nondefective ladder too short for the assigned task. Further, none of the kinds of equipment enumerated in Labor Law § 240 (1) (including a scaffold, the alternative device suggested in plaintiffs' reply brief) is designed to protect workers from horizontally protruding rods, as opposed to risks specifically related to elevation. Thus, like the conduit protruding from the floor in *Melber*, the rods protruding from the wall in this case did not pose "a risk that can be avoided by proper placement or utilization of one of the devices listed in Labor Law § 240 (1)," since "[t]he protective equipment envisioned by the statute is simply not designed to avert" that particular hazard (91 NY2d at 763). This, I think, sufficiently explains why, under the particular circumstances presented here, the failure to provide a different safety device did not constitute a violation of section 240 (1). I would further note that plaintiff offers nothing but speculation to support his theory that the use of a different safety device (such as a scaffold) would have avoided the risk he encountered. In any event, the unproven hypothesis that some alternative device might have avoided the obstruction posed by the rods cannot change the fact that Labor Law § 240 (1) is not addressed to such non-elevation-related risks.[2]

---

2. Moreover, it is not clear that the scaffold suggested by plaintiff would have been practical for a job to be performed at a height of eight to nine feet by a worker who was six feet tall. We also have no way of determining whether

The majority cannot successfully distinguish this case from *Nieves*, in which, as previously discussed, the plaintiff was injured when he stepped on a concealed object as he descended from a ladder after installing a sprinkler on a ceiling. There, as here, although "[t]here was no evidence of any defective condition of the ladder or instability in its placement" (93 NY2d at 916), the mishap resulted from the proximity of an adequate and nondefective ladder to an extraneous object that, while not affecting the ladder's stability, obstructed the worker's movement as he climbed down. Thus, contrary to the majority's assertion, this case cannot be distinguished from *Nieves* on the ground that the ladder failed to "permit [plaintiff] to avoid the hazard in the course of his descent." Equally unavailing is the majority's reliance on a distinction without a difference—that the obstruction here was an object protruding from a wall, while in *Nieves* it was "something *on the ground.*" Contrary to the majority's suggestion, the mishap in *Nieves*, like the mishap here, occurred "in the course of [the worker's] descent" from the ladder, before he reached the ground. Specifically, the *Nieves* plaintiff's "right foot remained on the ladder as his left foot hit the concealed object on the floor, causing him to twist his ankle, fall and incur injuries" (93 NY2d at 915). Thus, I see no basis in the Court of Appeals' decision for the majority's view that *Nieves* would have been decided differently if the offending object had been sticking out of the wall rather than resting on the floor.[3] *Nieves* is therefore precisely on point, and establishes, as a matter of law, that the hazard posed by the protruding rods, though real, was not within the scope of Labor Law § 240 (1) because it was "separate . . . [and] wholly unrelated to the risk which brought about the need for the [ladder] in the first

---

a scaffold of the appropriate height could have been placed in the required corner location, given the presence of the toilet roughing and the protruding rods.

**3.** Similarly, in *Melber*, the plaintiff was held to have no claim under section 240 (1), notwithstanding that he was elevated by 42-inch stilts (as compared to the two-foot-high ladder-rung from which plaintiff fell here) when he tripped on the conduit protruding from the floor. The Court of Appeals stated: "Even if the stilts failed to avoid that pitfall, plaintiff's injuries allegedly flowed from a deficiency in the device that was wholly unrelated to the hazard which brought about its need in the first instance" (91 NY2d at 764 [internal quotation marks and citations omitted]). Thus, contrary to the majority's view, *Melber* would have been decided the same way if the conduit had been protruding from the wall, like the rod in this case, rather than from the floor.

instance" (*id.* at 916). Accordingly, not only were plaintiffs correctly denied summary judgment as to liability on their Labor Law § 240 (1) claim, summary judgment dismissing that cause of action should be rendered upon a search of the record.

TOM, J.P., and GONZALEZ, J., concur with SAXE, J.; FRIEDMAN and MCGUIRE, JJ., dissent in part in a separate opinion by FRIEDMAN, J.

Order, Supreme Court, New York County, entered January 5, 2007, modified, on the law, and plaintiffs' cross motion for summary judgment on their Labor Law § 240 (1) claim granted, and as so modified, affirmed, without costs.