Jose CHIMBAY, Plaintiff,

v.

AVALONBAY COMMUNITIES, INC., d/b/a Avalon Pines, DaVinci Construction of Nassau, Inc., d/b/a/ DaVinci Construction Company, Defendants.

DaVinci Construction of Nassau, Inc., d/b/a/ DaVinci Construction Company, Third–Party Plaintiff

v.

Gold Star Construction, Inc., Burlington Insurance Company, Third–Party Defendants.

No. 06–CV–1908 (JS) (MLO).

United States District Court, E.D. New York.

Sept. 26, 2008.

Richard M. Winograd, Esq., Gary R. Novins, Esq., Ginarte, O'Dwyer & Winograd, LLP, New York, NY, for Plaintiff.

Richard Lyle Reiter, Esq., Guy J. Levasseur, Esq., Nancy Quinn Koba, Esq., Wilson Elser Moskowitz Edelman & Dicker, LLP, White Plains, NY, for Defendant AvalonBay Communities, Inc.

Paul Kovner, Esq., Rubin & Fiorella, New York, NY, for Defendant DaVinci Construction.

No Appearance, for Third–Party Defendant Gold Star Construction.

Adrian Marshall Szendel, Esq., Ford Marrin Esposito Witmeyer & Gleser, New York, NY, for Third–Party Defendant Burlington Ins.

## MEMORANDUM AND ORDER

SEYBERT, District Judge:

### INTRODUCTION

On April 25, 2006, Plaintiff Jose Chimbay filed a Complaint against Defendants AvalonBay Communities, Inc. ("AvalonBay"), and DaVinci Construction of Nassau, Inc. ("DaVinci") seeking to recover for injuries Plaintiff suffered while working at a construction site. Plaintiff alleges that his accident was a result of AvalonBay's and DaVinci's negligence and asserts claims under New York Labor Law §§ 200, 240, and 241.

On June 13, 2006, DaVinci answered the Complaint and filed a cross-claim against AvalonBay, and on June 30, 2006, AvalonBay filed a cross-claim against DaVinci. On October 17, 2006, DaVinci filed a third-party Complaint against Gold Star Construction, Inc. ("Gold Star") and Burlington Insurance Company ("Burlington"). Pending before the Court are four separate summary judgment motions filed by Plaintiff, Burlington, DaVinci, and Avalon-Bay. For the reasons stated below, Plaintiff's motion for partial summary judgment is GRANTED, AvalonBay's motion for summary judgment against DaVinci on its cross-claims is DENIED, DaVinci's motion for summary judgment against Burlington is DENIED, and Burlington's motion for summary judgment against DaVinci is GRANTED.

### BACKGROUND

The following facts are taken from the Parties' 56.1 Statements and Counter-Statements and the exhibits thereto.

On or about October 27, 2003, DaVinci and AvalonBay entered into a contract for the supply of labor and/or material for the construction of Avalon Pines (the "AvalonBay–DaVinci Contract"). (AvalonBay 56.1 Stmt. ¶ 4.) Pursuant to the AvalonBay–DaVinci Contract, DaVinci was required to procure an insurance policy and name AvalonBay as an additional insured under the policy. (Id. ¶ 5.) The AvalonBay–DaVinci Contract also contained an indemnification clause wherein DaVinci agreed to "defend [AvalonBay] against any [c]laims and/or [l]osses brought or instituted by third parties." (Id. ¶¶ 8, 9.)

Gold Star is a New York corporation with its principal place of business located in Port Jefferson Station, New York. (DaVinci 56.1 Stmt. ¶ 2.) In 2005, DaVinci employed Gold Star as a sub-contractor to perform the framing of buildings at Avalon Pines. (Pl's 56.1 Stmt. ¶ 3.) DaVinci alleges that it had an agreement with Gold Star wherein Gold Star agreed to indemnify DaVinci from all causes of action for personal injury, including those brought by Gold Star employees (the "DaVinci–Gold Star Agreement"). (DaVinci 56.1 Stmt. ¶ 5.) Defendant Burlington agrees that the parties had an agreement, signed June 27, 2005, but argues that there is an issue of fact as to whether the DaVinci–Gold Star Agreement contained such a hold-harmless provision. (Burlington 56.1 Stmt. ¶ 6.) Burlington argues that the agreement the parties provided to Burlington did not contain a hold-harmless section. (Id.)

Burlington issued an insurance policy to Gold Star which named DaVinci as an additional insured (the "Policy"), and which had a term of November 5, 2004 to November 5, 2005. (DaVinci 56.1 Stmt. ¶ 7; Burlington 56.1 Stmt. ¶ 5.) The Policy had a provision requiring the insured parties to notify Burlington "as soon as practicable of an 'occurrence' or an offense which may result in a claim." (Burlington 56.1 Stmt. ¶ 12.)

Plaintiff performed work on the Avalon Pines project for Gold Star. (Pl.'s 56.1 Stmt. ¶ 2.) The parties dispute whether

Plaintiff was an employee or an independent contractor, and take issue with Plaintiff's characterization of himself as a "laborer." (Pl.'s 56.1 Stmt. ¶ 2.) On October 21, 2005, Plaintiff became injured after falling from an elevated work surface. (*Id.* ¶¶ 2, 4.)

DaVinci had general procedures for handling accident reports, which involved filling out an accident report, getting copies of medical records, and submitting a claim *to a broker to forward to the insurance* company. (Burlington 56.1 Stmt. ¶ 16.) On October 21, 2005, Gold Star's superintendent, Claudeni da Silva ("Silva"), informed Trish Langer ("Langer"), a DaVinci employee, of Plaintiff's accident. (*Id.* ¶ 17.) Langer usually handled the paperwork involved with accidents on the job. (*Id.* ¶ 16.) Langer informed Artie Cipoletti, Vice–President of DaVinci, of the accident. (*Id.* ¶ 17.) No DaVinci employee filed an accident report at that time, or instructed Silva to provide medical records in the event that Plaintiff went to the hospital. (*Id.* ¶ 18.)

On October 24, 2005, Gold Star filed a workers' compensation form with the New York State Workers' Compensation Board which indicated that Plaintiff suffered broken feet and was treated at Universal Industrial Clinic in Newark, New Jersey. (*Id.* ¶ 20.) DaVinci did not request a copy of the workers' compensation form from Gold Star prior to the litigation. (*Id.* ¶ 21.) DaVinci admits that none of its employees followed up with Gold Star regarding Plaintiff's accident prior to the start of this litigation. (*Id.* ¶ 23.)

On June 6, 2006, DaVinci tendered coverage to Gold Star through its insurer's representative, UTC Risk Management. (*Id.* ¶ 24.) On June 8, 2006, Burlington received notice of Plaintiff's incident. (DaVinci 56.1 Stmt. ¶ 8.) Burlington advised Gold Star that it was investigating the incident in a letter dated June 22, 2006. (Burlington 56.1 Stmt. ¶ 25.) Burlington hired RMG Investigations ("RMG") to investigate the circumstances of the accident. (*Id.* ¶ 26.) According to Burlington, RMG provided Burlington with a copy of the DaVinci–Gold Star Agreement that did not contain a hold-harmless agreement. (*Id.* ¶ 26.) DaVinci admits that Gold Star gave RMG a copy of the DaVinci–Gold Star Agreement, but denies knowledge of what contract pages were given. (DaVinci 56.1 Ctr–Stmt. to Burlington's 56.1 Stmt. ¶ 26.)

In a June 22, 2006 letter to UTC Risk Management, Burlington acknowledged receipt of DaVinci's tender. (Burlington 56.1 Stmt. ¶ 27.) Burlington denied all benefits of coverage to DaVinci and to Gold Star via two separate letters dated July 11, 2006 (Burlington 56.1 Stmt. ¶¶ 28, 29.) In its disclaimer letters, Burlington cited to several policy provisions which state, *inter alia,* that the insurance policy does not apply to bodily injury or personal injury of any employees of the insured (the "Cross–Liability Provision"), that the policy limits coverage for contractual indemnification to insured contracts as defined in the policy, and that the policy requires notice "as soon as practicable" of an occurrence that might result in a claim. (*Id.*)

Plaintiff now moves for partial summary judgment on his Labor Law claims against Defendants; AvalonBay moves for summary judgment against DaVinci on its cross-claims for breach of contract, indemnification, and contribution; DaVinci moves for summary judgment against Burlington on the grounds that Burlington is obligated to pay for DaVinci's liability arising out of the bodily injuries to Plaintiff, and finally, Burlington moves for summary judgment against DaVinci declaring that Burlington has no obligation to provide coverage to DaVinci.

*DISCUSSION*

### I. Standard Of Review On Summary Judgment

"Summary judgment is appropriate where there is no genuine dispute concerning any material facts, and where the moving party is entitled to judgment as a matter of law." *Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.),* 153 F.3d 61, 67 (2d Cir.1998) (citing Fed. R. Civ. P. 56(c)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." *McLee v. Chrysler Corp.,* 109 F.3d 130, 134 (2d Cir.1997); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *McLee,* 109 F.3d at 134.

"Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000) (*quoting Anderson,* 477 U.S. at 256, 106 S.Ct. 2505). "Mere conclusory allegations or denials will not suffice." *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986). Indeed, when a motion for summary judgment is made, it is time to "to put up or shut up.... [U]nsupported allegations do not create a material issue of fact." *Weinstock,* 224 F.3d at 41 (inter-

nal citations omitted). It is within this framework that the Court addresses the present summary judgment motions.

### II. Plaintiff's Motion

Plaintiff moves for partial summary judgment on his Labor Law 240(1) claim against AvalonBay and DaVinci.

Section 240(1) of the Labor Law states,

All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

■ In order to prevail under Section 240(1), a plaintiff must show that (1) there was a violation of the statute and (2) the violation was a proximate cause of the plaintiff's injury. *See Fernandez v. CMB Contr.,* 487 F.Supp.2d 281, 286 (E.D.N.Y. 2007). To establish a violation of the statute, a plaintiff must show that "he was not provided proper protection in the form of scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, or other devices." *Wojcik v. 42nd St. Dev. Project, Inc.,* 386 F.Supp.2d 442, 451 (S.D.N.Y.2005)

■ It is well established that once a plaintiff shows that "an accident [was] caused by a violation of the statute, the plaintiff's own negligence [will] not furnish a defense." *Cahill v. Triborough Bridge & Tunnel Auth.,* 4 N.Y.3d 35, 39, 823

N.E.2d 439, 790 N.Y.S.2d 74 (N.Y.2004). However, a plaintiff must show that the violation of the statute proximately caused plaintiff's injury; "where a plaintiff's own actions are the *sole* proximate cause of the accident, there can be no liability." *Id.* (emphasis added). This theory, known as the "recalcitrant worker" defense, absolves a defendant from liability if it is shown that an "owner or contractor ... provided appropriate safety devices to workers and properly instructed workers in their use" but the plaintiff refused to use the devices. *Smith v. Hooker Chems. & Plastic Corp.,* 89 A.D.2d 361, 366, 455 N.Y.S.2d 446 (4th Dep't 1982). "[A]n owner who has provided safety devices is not liable for failing to 'insist that a recalcitrant worker use the devices.'" *Cahill,* 4 N.Y.3d at 39, 790 N.Y.S.2d 74, 823 N.E.2d 439 (*quoting Smith,* 89 A.D.2d at 365, 455 N.Y.S.2d 446).

Plaintiff argues that he is entitled to summary judgment on his Labor Law 240(1) claim because he was injured while working on the Avalon Pines project, and his injury was proximately caused by Defendants' failure to provide safety devices. Plaintiff states that both Defendants may be held liable under the statute because AvalonBay was the owner of the premises in question, and DaVinci was the construction manager and had the authority to control activities at the work site. DaVinci argues that Plaintiff is not entitled to summary judgment because Plaintiff's accident was not the type of accident that Section 240(1) protects against, and because DaVinci is not the type of contractor who can be subject to Labor Law liability. Avalon-Bay argues that summary judgment should be denied because there are issues of fact as to whether Plaintiff was provided with safety devices and whether Plaintiff's own actions were the sole proximate cause of his injury.

### A. *Plaintiff's Accident Is Covered By The Labor Law*

■ Plaintiff alleges that he was standing on top of a wall consisting of 2x4s when the wall collapsed and Plaintiff fell. DaVinci argues that a wall collapse is not the kind of event which triggers liability under Labor Law 240, and cites to several state court cases to support this argument. The Court finds that DaVinci's cited cases do not support the proposition that a fall from a collapsed wall is not covered by the Labor Law.

For example, in *Misseritti v. Mark IV Constr. Co.,* 86 N.Y.2d 487, 634 N.Y.S.2d 35, 657 N.E.2d 1318 (N.Y.1995), the New York Court of Appeals held that the plaintiff could not recover under the Labor Law for injuries sustained from the collapse of a fire wall. The plaintiff claimed that the absence of any bracing on the fire wall caused it to collapse at the construction site where the plaintiff's husband was working, resulting in his death. The Court of Appeals held that the term "braces" in Section 240 refers to "those used to support elevated work sites not braces designed to shore up or lend support to a completed structure." *Id.,* 634 N.Y.S.2d 35, 657 N.E.2d at 1321. Because the decedent was sweeping the flooring in the area and "was [not] working at an elevated level at the time of his tragic accident," the Court of Appeals held that the decedent's incident was not covered by the Labor Law. However, unlike the plaintiff in *Misseritti,* Chimbay was working and standing on the wall at the time that it collapsed, and was not working on the ground adjacent to the wall. Plaintiff's accident, which occurred while he was working on an elevated surface, is the type of incident that the Labor Law intends to protect against.

*Narducci v. Manhasset Bay Assocs.*, 96 N.Y.2d 259, 750 N.E.2d 1085, 727 N.Y.S.2d 37 (N.Y.2001) similarly does not support DaVinci's argument. The New York Court of Appeals in *Narducci* held that the plaintiffs could not recover because there were no allegations that the defendants failed to use adequate hoisting or securing devices. Rather, the plaintiffs were injured when falling objects fell on them. The decision acknowledged that the falling objects similarly could have fallen on the plaintiffs while they were at ground level, and the falling objects were not "related to a 'significant risk inherent in ... the relative elevation ... at which materials or loads must be positioned or secured.'" *Id.* at 268, 727 N.Y.S.2d 37, 750 N.E.2d 1085 (*quoting Rocovich v. Consolidated Edison Co.*, 78 N.Y.2d 509, 514, 583 N.E.2d 932, 577 N.Y.S.2d 219 (1991)). Because the plaintiffs' injuries were not caused by a fall from an elevated surface or by an object being hoisted or secured, the plaintiffs could not recover under the Labor Law. Here, Plaintiff is not seeking to recover from injuries sustained as a result of a falling object hitting him; Plaintiff's injuries occurred from Plaintiff's *own* fall from an elevated surface.

Neither of DaVinci's cited cases support the contention that Plaintiff's fall, which occurred when the wall upon which he was standing collapsed, is not the type of accident covered by the Labor Law. Rather, Plaintiff's injuries are precisely the type that the Labor Law seeks to guard against. Plaintiff was working on an elevated surface, here a wall, which collapsed and resulted in Plaintiff's fall. This clearly is within the ambit of the Labor Law, which "imposes a nondelegable duty on building owners and their agents to provide or cause to be furnished safety devices for workers at elevated work sites in order to protect them from being injured as a result of a fall." *Hocza v. City of New*

York, No 06–CV–3340, 2008 WL 2557423, at *3, 2008 U.S. Dist. LEXIS 49466, at *8 (S.D.N.Y. June 24, 2008); *see also Collins v. County of Monroe Industrial Dev. Agency*, 167 A.D.2d 914, 561 N.Y.S.2d 995 (4th Dep't 1990) (plaintiff was entitled to recover under Labor Law where he "was injured when the concrete floor of an underground parking garage collapsed, causing him to fall to the floor below.").

### B. *DaVinci's Is A Contractor And Is Subject To Liability Under The Labor Law*

■ DaVinci next argues that it was neither an owner or a contractor of the premises, and rather was "simply a framing contractor which subcontracted some of the framing work to plaintiff's employer, Gold Star." DaVinci argues that Avalon-Bay was actually the owner and contractor of the site. (Devany Aff. ¶ 11.) The Court finds DaVinci's arguments to be without merit.

■ Section 240 does not provide a definition for the term "contractor." "However, the legislative history of its most recent enactment ... and its consistent interpretation by the courts make clear that the targets of this statutory imposition of a nondelegable duty ... are those who have the power to enforce safety standards and choose responsible subcontractors." *Nowak v. Smith & Mahoney, P.C.*, 110 A.D.2d 288, 290, 494 N.Y.S.2d 449 (3d Dep't 1985). "The key criterion is 'the right to insist that proper safety practices were followed and it is the right to control the work that is significant, not the actual exercise or nonexercise of control.'" *Id.* (*quoting Copertino v. Ward*, 100 A.D.2d 565, 567, 473 N.Y.S.2d 494 (2d Dep't 1984)).

Utilizing this criterion, the Court finds that the agreements between the parties

and the parties' interaction establish that DaVinci was a contractor for purposes of the statute. The AvalonBay–DaVinci Contract labels AvalonBay as the "Owner" and DaVinci as the "Contractor," and states that DaVinci shall "perform all work and furnish all labor, materials, equipment, scaffolding, tools, supervision, ... for the construction and completion of certain work." (Winograd Aff. Ex. M). Section 12 of the AvalonBay–DaVinci Contract gave DaVinci the "authority to insist that proper safety practices be followed by other contractors." *Aversano v. JWH Contr., LLC*, 37 A.D.3d 745, 831 N.Y.S.2d 222, 224 (2d Dep't 2007). Moreover, it is clear from the DaVinci–Gold Star Agreement that DaVinci hired Gold Star and paid Gold Star directly. (*See* DaVinci Shared Exhibits, Ex. H.) Lastly, DaVinci required Cipoletti to supervise the project, ensure that both DaVinci and Gold Star employees were present each morning, and ensure that the Gold Star employees were complying with the parties' safety agreement. (Cipoletti Dep. 7:8–8:9, 20:13–20:22). These elements establish that DaVinci had the "the power to enforce safety standards and choose responsible subcontractors." *Nowak v. Smith & Mahoney, P.C.*, 110 A.D.2d 288, 494 N.Y.S.2d 449, 450 (3d Dep't 1985).

■ DaVinci next argues that its safety obligations were delegated to Gold Star, at least with respect to Gold Star employees. The Court rejects this contention because it is firmly established that the duties imposed by the Labor Law are nondelegable. *See Hocza v. City of New York*, No 06–CV–3340, 2008 WL 2557423, at *3, 2008

U.S. Dist. LEXIS 49466, at *8 (S.D.N.Y. June 24, 2008) ("It is well established that Section 240(1) imposes a *nondelegable duty* on building owners and their agents to provide or cause to be furnished safety devices for workers at elevated work sites in order to protect them from being injured as a result of a fall.") (emphasis added).

Because the Labor Law was enacted to protect against accidents such as Plaintiff's, and because DaVinci is subject to liability under the Labor law, the Court GRANTS Plaintiff's motion for partial summary judgment on its Labor Law claims against Defendant DaVinci.

### C. *AvalonBay Has Not Established That Plaintiff Was Provided With Safety Devices*

■ Defendant AvalonBay argues that it did not violate Section 240(1) because Plaintiff was provided with proper safety devices. In support of this contention, AvalonBay cites to Cipoletti's deposition testimony wherein Cipoletti states that Gold Star stored ladders of various sizes and other equipment in a construction trailer located on site, and that Cipoletti visually observed Gold Star provide ladders to the workers on this project. (Cipoletti Dep. 82:10–25, 83:2–10, 87:21–25.) However, Cipoletti did not testify that he saw Defendants erect ladders, or otherwise take ladders out of the trailer and place them near the work site for the workers' use. Cipoletti's knowledge that Gold Star provided ladders seems limited to Cipoletti's observation of the ladders stored in the trailer.[1]

---

1. Cipoletti's entire deposition testimony with respect to the availability of ladders and safety equipment is as follows:

 Q. Were there construction trailers where ladders and other equipment were stored?
 A. Yes.

 Q. Did DaVinci have its own construction trailer for that purpose?
 A. Yes
 Q. Did Gold Star have its own construction trailer for that purpose?

AvalonBay's observation of ladders and other safety equipment stored in a nearby trailer is insufficient to defeat summary judgment. "The mere presence of ladders or safety belts somewhere at the worksite does not establish 'proper protection.'" *Zimmer v. Chemung County Performing Arts, Inc.*, 65 N.Y.2d 513, 524, 482 N.E.2d 898, 493 N.Y.S.2d 102 (1985) (holding that defendant violated Section 240(1) because although "ladders were present at the worksite, ... none had been erected for plaintiff's specific task"). The fact that ladders and other safety devices were hidden in a trailer will not absolve Defendants of liability; rather, Defendants must show that Plaintiff was provided with such safety devices. *See Palen v. ITW Mortg. Invs. III, Inc.*, No. 99–CV–3850, 2003 WL 1907980, at *3, 2003 U.S. Dist. LEXIS 6543, at *10 (S.D.N.Y. Apr. 16, 2003) ("Simply supplying the necessary safety equipment is not enough. The statute clearly states that the [safety equipment] must have been properly 'placed, and operated as to give proper protection to a person so employed.'") (*quoting* N.Y. Lab. Law § 240(1) (McKinney 1986)); *see also Cohen v. Memorial Sloan–Kettering Can-*

*cer Ctr.*, 50 A.D.3d 227, 850 N.Y.S.2d 435, 438 (1st Dep't 2008); *Orellana v. Am. Airlines*, 300 A.D.2d 638, 753 N.Y.S.2d 114, 116 (2d Dep't 2002) ("The mere presence of ladders somewhere at the work site does not establish that such devices were so placed as to give the proper protection required by the statute.").

The Court has scoured the record, and there is no evidence or deposition testimony indicating that ladders were erected or otherwise placed somewhere in the immediate vicinity of where Plaintiff was working, or that Plaintiff was otherwise provided with safety equipment and directed to use it. Rather, the record merely shows that ladders and other equipment may have been stored in a trailer on the construction site. Nor have either Defendants provided any evidence to refute Plaintiff's deposition testimony that he was not wearing a harness at the time of the accident, and was never instructed to wear a harness. (Chimbay Dep. 41:9–14.) Defendants have failed to prove that they provided Plaintiff with safety equipment; rather, the facts set forth thus far establish that Plaintiff was working at an eleva-

A. Yes
 * * * * * *
Q. Did Gold Star have ladders and other devices available for its employees?
A. Yes
 * * * * * *
Q. With respect to what your counsel just asked in terms of ladders, what is your basis of knowledge that Gold Star provided ladders for their construction workers on this project?
A. I visually saw them.
Q. Can you tell me how many ladders they provided?
A. No. Several.
Q. Do you know where the ladders were kept?
A. In the trailer.
 * * * * * *
Q. What type of ladders did you observe in Gold Star's trailer?

A. Fiberglass ladder.
Q. A-frame ladders as well?
A. Yes.
Q. How many different types?
A. Two different types, extension ladders and A-frame.
Q. Would those types of ladders be sufficient for the height Gold Star was working on?
A. Yes.
 Cipoletti Dep. 81:14–22, 82:10–12, 82:19–83:6, 87:21–88:8.
 At no point in the above testimony does Cipoletti state that he saw the ladders or safety equipment anywhere other than in the trailers.

tion, Plaintiff was not provided with ladders or harnesses, and Plaintiff fell from the elevated surface and sustained injuries.

### D. *The Recalcitrant Worker Defense*

 AvalonBay argues that there is no evidence to suggest that Plaintiff would have used a ladder if he had been provided with one. The Court finds that AvalonBay cannot avail itself of the recalcitrant worker defense because that defense "is limited to cases in which a worker has been injured as a result of a refusal to use available safety devices provided by the employer or owner." *Hagins v. State*, 81 N.Y.2d 921, 597 N.Y.S.2d 651, 613 N.E.2d 557 (N.Y.1993); *see also Wojcik v. 42nd St. Dev. Project, Inc.*, 386 F.Supp.2d 442, 452 fn. 10 (S.D.N.Y.2005) ("The recalcitrant worker has, by definition, been provided with adequate and safe equipment to complete his task. In other words, there is no violation of § 240(1). Despite being properly instructed on the use of the protective equipment, which is readily available to her, she obstinately (or recalcitrantly) refuses to use that equipment."); *Lawrence v. Finch Pruyn & Co.*, 891 F.Supp. 75, 78 fn. 5 (N.D.N.Y.1995) (holding that the recalcitrant worker doctrine is a "limited defense ... which is only valid where the worker refused to use an available safety device.").

Here, there is no evidence that Plaintiff refused to use an available safety device, and as stated above, no evidence to show that Defendants even provided Plaintiff with safety devices. The hypothetical contention that Plaintiff may not have used safety devices had they been provided to him does not set forth a viable recalcitrant worker defense.

### E. *Proximate Cause*

 AvalonBay next argues that the failure to supply Plaintiff with safety equipment was not the proximate cause of Plaintiff's injury. Defendant argues that Plaintiff was in charge of the crew members responsible for nailing the walls to make them secure, and Plaintiff's failure to supervise the crew members properly could have been the proximate cause of Plaintiff's injuries. However, while Plaintiff's failure to ensure that nails were properly installed into the wall may have contributed to the accident, AvalonBay has failed to show that Plaintiff's allegedly improper supervision was the *sole* proximate cause of the accident. "A defendant may be released from liability only in cases where it is shown that the worker's actions were the 'sole' proximate cause of the injuries sustained." *Pollack v. Safeway Steel Prods.*, 457 F.Supp.2d 444, 449 (S.D.N.Y. 2006) (internal citations and quotations omitted). Plaintiff's failure to supervise his crew members properly only indicates that Plaintiff may have been contributorily negligent, and it is already well established that "the contributory negligence of a worker is no defense to a Section 240 action." *McAllister v. G & S Investors*, 358 F.Supp.2d 146, 149 (E.D.N.Y.2005); *see also Rocovich v. Consol. Edison Co.*, 78 N.Y.2d 509, 583 N.E.2d 932, 934, 577 N.Y.S.2d 219 (N.Y.1991) ("Negligence, if any, of the injured worker is of no consequence."). Accordingly, AvalonBay has not refuted Plaintiff's showing that Defendants' failure to provide safety devices was the proximate cause of Plaintiff's injuries.

The Court finds that Plaintiff has shown, and Defendants have failed to refute, that Plaintiff fell from an elevated surface at a construction site, Defendants failed to provide Plaintiff with safety devices, and that Defendants failure to provide safety devices was a proximate cause of Plaintiff's injuries. Accordingly, the Court grants partial summary judgment for Plaintiff on the issue of liability under Labor Law

240(1). *See Hocza v. City of New York,* No. 06–CV–3340, 2008 WL 2557423, 2008 U.S. Dist. LEXIS 49466 (S.D.N.Y. June 24, 2008) (granting partial summary judgment on liability to a plaintiff who fell from a height of approximately eighteen feet while engaged in construction work for which he had not been provided with any safety devices); *Palen v. ITW Mortg. Invs. III, Inc.,* No. 99–CV–3850, 2003 WL 1907980, at *4, 2003 U.S. Dist. LEXIS 6543, at *11 (S.D.N.Y. Apr. 16, 2003) (holding that the defendants violated Section 240(1) as a matter of law and that there was no issue of fact for a jury to decide because defendants' failed to show that the "plaintiff's accident was caused by something other than the adequacy of the equipment provided.").

### III. *AvalonBay's Motion For Summary Judgment Against DaVinci*

AvalonBay moves for summary judgment on its cross-claims against DaVinci for contractual indemnification, common law indemnification, breach of contract, and contribution.[2] DaVinci argues that (1) AvalonBay is precluded from bringing a breach of contract claim because it has unclean hands and because the contract contains an arbitration agreement, (2) AvalonBay's motion is premature, and (3) there is an issue of fact as to whether DaVinci breached its contract with Avalon-Bay.

#### A. *Indemnification*

 "A party is entitled to full contractual indemnification provided that the intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances." *Drzewinski v.*

*Atlantic Scaffold & Ladder Co.,* 70 N.Y.2d 774, 777, 515 N.E.2d 902, 904, 521 N.Y.S.2d 216, 218 (N.Y.1987) (internal quotations omitted). Moreover, "[i]t is well settled that an 'owner or general contractor who is held strictly liable under Labor Law § 240(1) is entitled to full indemnification from the party actually responsible for the incident.'" *Frank v. Meadowlakes Dev. Corp.,* 6 N.Y.3d 687, 690, 849 N.E.2d 938, 816 N.Y.S.2d 715 (N.Y.2006) (*quoting Gillmore v. Duke/Fluor Daniel,* 221 A.D.2d 938, 939, 634 N.Y.S.2d 588 (N.Y. 1995)). However, "[i]n order for a party who has been held strictly liable to be entitled to either type of indemnification, . . . it must establish that it was 'free from any negligence and was held liable solely by virtue of the statutory liability.'" *Nat'l Union Fire Ins. Co. v. Universal Fabricators, Inc.,* No. 05–CV–3418, 2007 U.S. Dist. LEXIS 49284, at *20 (S.D.N.Y. July 6, 2007) (*quoting Correia v. Professional Data Mgmt., Inc.,* 259 A.D.2d 60, 693 N.Y.S.2d 596, 600 (1st Dep't 1999)). A party seeking common-law indemnification "bears the additional burden to prove 'not only that it was not guilty of any negligence beyond the statutory liability but [also] that the proposed indemnitor was guilty of some negligence that contributed to the causation of the accident for which the indemnitee was held liable to the injured party by virtue of some obligation imposed by law, such as the non-delegable duty imposed by Labor Law Section 240(1).'" *Nat'l Union Fire Ins. Co.,* 2007 WL 1975566, 2007 U.S. Dist. LEXIS 49284, at *20 (*quoting Correia,* 693 N.Y.S.2d at 600).

██ AvalonBay argues that its contract with DaVinci required DaVinci to indemnify AvalonBay from claims such as

---

**2.** AvalonBay does not make any arguments in support of its cross-claim for contribution that are separate and apart from AvalonBay's arguments regarding its contractual indemnification, common law indemnification, and breach of contract arguments.

those brought by Plaintiff. Specifically, AvalonBay cites to sections 19.1 and 19.2 of the AvalonBay–DaVinci contract, which state, in pertinent part:

> 19.1 Obligation to Defend, Indemnify and Save Harmless.
>
> With the exception that this Section 19 shall in no event be construed to require indemnification by Contractor to a greater extent than permitted under the public policy of the state in which the community is located, Contractor shall defend, indemnify and save harmless Owner, including its officers, directors, agents, employees, ... of and from any and all claims, demands, causes of action in law or in equity, damages, penalties, costs, expenses, actual attorneys' fees, ... or [sic] every kind and nature whatsoever, including, without limitation, damages from personal injury, bodily injury, emotional injury, ... to any persons (including, but not limited to, any employees or agents of Contractor, Owner, or any other contractor, of any person), economic loss, property damage, and loss of use (all of which are collectively referred to as "Claims and/or Losses") arising out of or in any way connected with or incidental to, the performance of the Work or any of the obligations contained in this Contract.
>
> 19.2 Third Party Claims and/or Losses. Contractor agrees, as its own cost, expense, and risk, to defend the indemnitees against any Claims and/or Losses that may be brought or instituted by third persons, including, but not limited to, government agencies or employees of Contractor or any subcontractor or supplier.

AvalonBay argues, and the Court agrees, that Plaintiff's claim in this case are covered by the parties' contractual indemnity clause. DaVinci does not argue that the indemnification provision is inapplicable, or that the contract is invalid. Rather, DaVinci claims that (1) AvalonBay's motion is premature because Plaintiff has not yet proven a claim against AvalonBay; (2) AvalonBay may be barred from recovery if Plaintiff proves that AvalonBay was negligent or acted in a discriminatory manner;[3] and (3) AvalonBay has failed to show that it incurred any expenses in defending this action.

The Court declines to grant summary judgment for AvalonBay on its contractual indemnification claim. In order to grant summary judgment, the Court would have to find that there are no issues of fact regarding AvalonBay's own negligence. *See Palen v. ITW Mortg. Invs. III, Inc.,* No. 99–CV–3850, 2003 WL 1907980, at *6, 2003 U.S. Dist. LEXIS 6543, at *20 (S.D.N.Y. Apr. 16, 2003) ("It is well settled law that a right of contractual indemnification is uniformly granted in New York where there is no finding of negligence on the part of the owner."). Plaintiff's Complaint states a cause of action for negligence against both AvalonBay and DaVinci. Although a review of the evidence and papers submitted thus far does not reveal any negligent acts by AvalonBay, it would be inappropriate for the Court to make an independent determination as to AvalonBay's level of fault at this time. Plaintiff moved for partial summary judgment only on his Labor Law 240(1) claim, and AvalonBay has not moved for summary judgment against Plaintiff on his negligence claim. Although it is unclear whether

---

**3.** The Court notes that there are no allegations in Plaintiff's Complaint that any of the Defendants acted in a discriminatory manner towards Plaintiff. *As such, the Court is un-* clear as to why DaVinci raises a hypothetical claim of discrimination in its opposition papers.

Plaintiff would be able to sustain a negligence action against AvalonBay, the Court will not rule on this matter at this time because neither party has moved on the issue of negligence at this time, and it is possible that Plaintiff has further evidence on this claim that he has not yet put before this Court. The Court therefore DENIES AvalonBay's motion for summary judgment on its cross-claim for contractual indemnification. However, the Court's denial of AvalonBay's motion for summary judgment on its cross-claim for contractual indemnification is without prejudice to AvalonBay renewing its motion if Plaintiff's underlying negligence claim is resolved prior to trial.[4]

Likewise, the Court cannot grant summary judgment on AvalonBay's common law indemnification action because neither AvalonBay, nor any of the other parties, have made a showing that DaVinci was negligent. As above stated, AvalonBay bears the additional burden on its common law indemnification claim to prove that DaVinci was guilty of some negligence that contributed to the accident. Because none of the parties in this action have made any conclusive showings regarding the relative degrees of fault attributable to each party, summary judgment is not proper on AvalonBay's common-law indemnification claim. *See Kwang Ho Kim v. D & W Shin Realty Corp.*, 47 A.D.3d 616, 852 N.Y.S.2d 138, 143–144 (2d Dep't 2008) (holding that lower court acted improperly by searching the record and dismissing cross-claim for common-law indemnification where there may still have been "triable issues of fact concerning the degree of fault attributable to each party involved."). Accordingly, the Court DENIES AvalonBay's motion for summary judgment on its cross-claim for common-law indemnification.

## B. *Breach Of Contract*

 AvalonBay argues that DaVinci breached its contract by failing to name AvalonBay as an additional insured on DaVinci's insurance policy. In support of this argument, AvalonBay submits a letter from UTC Risk Management Services ("UTC"), a company hired by DaVinci's insurance company, Sirius America Insurance Company ("Sirius"), wherein UTC denies coverage for AvalonBay. In the letter, UTC states, "a review of our file does not confirm the existence of any additional insured status for [AvalonBay] under the above noted policy for DaVinci Construction of Nassau, Inc." (Levasseur Aff. Ex. E). The Court finds that UTC's letter does not conclusively demonstrate that DaVinci failed to name AvalonBay as an additional insured. The letter is vaguely written, and does not necessarily stand for the preposition that UTC *never* had an insurance policy naming AvalonBay as an additional insured; rather, it is equally possible that UTC misplaced the policy in its own file, or that UTC interpreted its policies in manner inconsistent with DaVinci's interpretations.

Additionally, the Court finds that DaVinci's Certificate of Insurance creates an issue of fact. Both parties admit that DaVinci submitted a Certificate of Insurance, dated August 20, 2004, to AvalonBay indicating that AvalonBay had been named as an additional insured. (Levasseur Aff Ex. D). However, AvalonBay argues that the Certificate of Insurance does not create an issue of fact as to whether DaVinci actually named AvalonBay as an additional insured because the certificate "does not confer any rights upon AvalonBay since such certificates are issued as a matter of information only."

4. The Court declines to address DaVinci's remaining arguments in opposition to Avalon-Bay's motion, which the Court finds are largely without merit.

While it is true that the Certificate of Insurance does not confer any rights upon AvalonBay, the Certificate nonetheless creates an issue of fact as to whether DaVinci procured insurance naming AvalonBay as an additional insured. The cases AvalonBay cites to involve a party attempting to use a certificate of insurance to obtain summary judgment on a contractual indemnification claim. In such cases, courts have denied summary judgment because a certificate of insurance, standing alone, is not proof that a party obtained insurance and named another as an additional insured. *See Empire Ins. Co. v. Insurance Corp. of N.Y.*, 40 A.D.3d 686, 836 N.Y.S.2d 228, 230 (2d Dep't 2007) ("A certificate of insurance . . . is insufficient, by itself, to show that such insurance had been purchased."). However, although a certificate of insurance does not prove that DaVinci purchased insurance and named AvalonBay as an additional insured, it does create an issue of fact on this issue. *See Citigroup, Inc. v. Indus. Risk Insurers*, 336 F.Supp.2d 282, 291 (S.D.N.Y.2004) ("On summary judgment, a certificate may be sufficient to raise an issue of fact . . . but it is not sufficient standing alone."); *see also Long v. Tishman/Harris*, 50 A.D.3d 356, 855 N.Y.S.2d 102, 104 (1st Dep't 2008) ("The certificate of insurance produced by the construction manager was sufficient by itself to raise an issue of fact as to whether it procured insurance for the steel contractor but not sufficient by itself to establish coverage as a matter of law.").

Accordingly, AvalonBay has failed to show that it is entitled to summary judgment on its cross-claim against DaVinci for breach of contract.

## IV. *Burlington And DaVinci's Summary Judgment Motions*

Both Burlington and DaVinci move for summary judgment on the issue of DaVinci's entitlement to coverage under Burlington's insurance policy with Gold Star (the "Burlington policy"). It is undisputed that DaVinci qualified as an "additional insured" under the Burlington policy. The issue in dispute is whether DaVinci is entitled to coverage under the Burlington policy for Plaintiff's injuries. Burlington argues that DaVinci is not entitled to coverage because DaVinci unreasonably delayed in notifying Burlington of Plaintiff's accident, and because the Cross–Liability Provision in the insurance policy excludes coverage for bodily injury to the employee of any insured. DaVinci argues that: (1) it did not unreasonably delay in reporting the incident, (2) the Cross–Liability Provision is ambiguous, (3) the Cross–Liability Provision is inapplicable to "insured contracts", such as that between DaVinci and Gold Star, and (4) the parties had a reasonable expectation of coverage and as such, Burlington should be estopped from enforcing the Cross–Liability Provision. The Court will address both motions for summary judgment together because they involve the same underlying issue of DaVinci's entitlement to coverage under the policy.

### A. *The Reasonableness Of DaVinci's Delay In Reporting Plaintiff's Accident Is A Disputed Issue Of Fact*

"A notice provision in an insurance policy is a condition precedent to coverage and, absent a valid excuse, the failure to satisfy the notice requirement vitiates the policy." *Travelers Ins. Co. v. Volmar Constr. Co.*, 300 A.D.2d 40, 752 N.Y.S.2d 286, 288 (1st Dep't 2002) (citations omitted). "The 'as soon as practicable' notice requirement is 'a standard provision in liability policies that has been interpreted to require notice within a reasonable time under the circumstances.'" (*U.S. Underwriters Ins. Co. v. Falcon Constr. Corp.*, No. 02–CV–4182, 2007 WL

1040028, at \*7, 2007 U.S. Dist. LEXIS 25391, at \*23 (S.D.N.Y. Apr. 4, 2007) (*quoting Travelers Ins. Co.*, 752 N.Y.S.2d at 288)). However, a "good-faith belief of nonliability may excuse or explain a seeming failure to give timely notice." *Sec. Mut. Ins. Co. of N.Y. v. Acker–Fitzsimons Corp.*, 31 N.Y.2d 436, 441, 340 N.Y.S.2d 902, 293 N.E.2d 76 (N.Y.1972). When such an explanation is proffered, "it may be relevant on the issue of reasonableness, whether and to what extent, the insured has inquired into the circumstances of the accident or occurrence." *Id.*

■■■ The Burlington Policy required an insured to notify Burlington "as soon as practicable of an 'occurrence' or an offense which may result in a claim." (DaVinci Shared Exhibits, Ex. I.) Burlington argues that DaVinci failed to comply with this requirement by reporting the incident in June of 2006, nearly eight months after Plaintiff's October 21, 2005 accident. DaVinci argues that it did not act unreasonably because it did not know that Plaintiff's accident would result in a claim until Plaintiff filed his Complaint. DaVinci also argues that Gold Star had a contractual obligation to provide written notice to DaVinci of any incident that might result in a claim under any of the insurance policies, and because Gold Star failed to provide written notice to DaVinci of Plaintiff's claims, DaVinci, in turn, reasonably believed that Plaintiff's accident would not result in a claim under the Burlington policy.

The Court finds that whether DaVinci's eight-month delay was reasonable under the circumstances of this case is a question of fact that cannot be decided on a motion for summary judgment. While it is true that DaVinci did not make any independent efforts to inquire into Plaintiff's incident, that is not dispositive on the issue. DaVinci argues that it did not believe that

Plaintiff's injuries would result in a claim because DaVinci was told that Plaintiff's injuries were minor. Burlington argues that DaVinci was present at the work-site and regularly communicated with Gold Star, and therefore should have known about Plaintiff's injuries, or at least should have investigated the accident. The Court cannot determine, at this stage, whether DaVinci had a good faith belief that it was not liable for Plaintiff's injuries. Under the circumstances of the case, it may have been reasonable for DaVinci to believe that Chimbay's accident was minor and would not have resulted in a claim. *See Cohen v. Utica First Ins. Co.*, 436 F.Supp.2d 517, 532 (E.D.N.Y.2006) (denying summary judgment where there was a "disputed issue of material fact [as to] whether [contractor's] delay was predicated on a good faith belief that it was not responsible for the fire"); *105 St. Assocs., LLC v. Greenwich Ins. Co.*, 507 F.Supp.2d 377, 383 (S.D.N.Y.2007) ("In any event, the issue of '[w]hether or not an insured's failure to provide timely notice to an insurer is reasonable under the circumstances is ordinarily a question of fact precluding summary judgment.'") (*quoting Mount Vernon Fire Ins. Co. v. Abesol Realty Corp.*, 288 F.Supp.2d 302, 311 (E.D.N.Y. 2003); *Argentina v. Otsego Mut. Fire Ins. Co.*, 86 N.Y.2d 748, 631 N.Y.S.2d 125, 126, 655 N.E.2d 166 (1995)).

B. *The Cross–Liability Provision Is Unambiguous And Bar's Coverage For Plaintiff's Injuries*

■■■ "An insurer seeking a determination that it is not obligated to defend an insured based upon an exclusion has the heavy burden of demonstrating that there is no reasonable possibility of coverage under the policy." *U.S. Underwriters Ins. Co. v. Congregation Kollel, Tisereth, Tzvi*, No 99–CV–7398, 2004 WL 2191051, at \*4,

2004 U.S. Dist. LEXIS 19608, at *12–13 (E.D.N.Y. Sept. 30, 2004) (internal citations and quotations omitted). "Moreover, whenever an insurer wishes to exclude certain coverage from its policy obligations, it must do so in clear and unmistakable language." (*Seaboard Surety Co. v. Gillette*, 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 876, 476 N.E.2d 272, 275 (1984)) (internal quotations and citations omitted). In this case, the Cross–Liability Provision in the Burlington policy states that the "insurance does not apply to any actual or alleged 'bodily injury' to [a] present, former, future, or prospective ... employee of any insured." (DaVinci Shared Exhibits, Ex. I, Form GSG–G 017 0100). The Court does not find any ambiguity in this provision and rejects DaVinci's argument that this statement is vague and should not be enforced. The provision states in plain language that the Burlington policy does not apply to employees of any insured. Contrary to DaVinci's stance that this provision is not readily understood "even by the typical attorney," the court finds nothing ambiguous in the Cross–Liability Provision.

The Court further finds that this provision unambiguously precludes coverage for Plaintiff's injuries. Plaintiff was an employee of Gold Star, an insured, and was injured while doing work for Gold Star. Under these circumstances, Plaintiff's injuries are excluded from coverage under the Burlington Policy. *See U.S. Underwriters Ins. Co.*, 2004 WL 2191051, at *5, 2004 U.S. Dist. LEXIS 19608 at *13–14 (finding that employee injury exclusion provision was clear and unambiguous); *U.S. Underwriters Ins. Co. v. Affordable Hous. Found., Inc.*, 256 F.Supp.2d 176, 179 (S.D.N.Y.2003) (finding that a similar exclusion clause "could not be clearer—the policy does not cover bodily injury as a result of work-related accidents, whether to employees of the named insureds or to the employees of contractors employed by the named insureds.").

The Court notes that several New York State courts have had the opportunity to review the same clause, or nearly identical clauses, and have also held that Burlington's policy unambiguously precludes coverage for bodily injuries to employees such as Chimbay. *See Allen–Stevenson School v. Burlington Insurance Co.*, No. 603036–2006, 2008 WL 972652 (N.Y.Sup.Ct. N.Y.Cty. March 31, 2008) ("Because this case arises out of the bodily injury of an employee of an insured under the Burlington Policy, the plain an unambiguous language set forth in the Cross Liability Exclusion applies to exclude coverage."); *Burlington Ins. Co. v. Galindo & Ferreira Corp. Co.*, 2008 N.Y. Slip Op. 51167U, 3, 2008 WL 2369791 (N.Y.Sup.Ct.Qns.2008) (insurance policy excluding "coverage for 'bodily injury to ... any insured or to any employee of such contractor' " did not cover accident involving an employee of subcontractor); *Sirius Am. Ins. Co. v. Burlington Ins. Co.*, 17 Misc.3d 1135(A), 851 N.Y.S.2d 74 (N.Y.Sup.Ct.N.Y.Cty.2007) (noting that exclusion policy stating that policy did not apply to bodily injury to an employee of the insured was "clear and would appear to be applicable to the [underlying] accident.")

C. *Insured Contract Are Not Exempt From The Cross–Liability Provision*

■ DaVinci next argues that the employee exclusion provision should *not apply* because the DaVinci–Gold Star agreement was an insured contract, and the Commercial General Liability Coverage Form, CG 00 01 07 98, incorporated into the Burlington Policy, states that the insurance policy does not apply to " 'bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the

assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages: ... (2) Assumed in a contract or agreement that is an 'insured contract' provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement." According to DaVinci, the DaVinci–Gold Star agreement is an insured contract because it required Gold Star to hold DaVinci harmless. As such, DaVinci argues that the employee exclusion provision does not apply because Gold Star assumed liability to pay for Plaintiff's injuries in the insured DaVinci–Gold Star agreement.

Burlington pro-offers several arguments in response to this argument. Burlington argues, *inter alia*, that the hold-harmless agreement between DaVinci and Gold Star does not create rights and obligations as between DaVinci and Burlington, and that the "insured contract" exclusion and the cross liability exclusion should be read *seriatim*. The Court finds that the DaVinci–Gold Star agreement may, in fact, create rights as between DaVinci and Burlington because the DaVinci–Gold Star agreement may qualify as an insured contract, thereby creating obligations between Burlington and DaVinci by the express terms of the Burlington policy. However, the Court declines to rule on this issue because the Court finds that the two exclusions should be read *seriatim*, and in so doing, the Court finds that the "insured contract" provision does not apply to the separate Cross–Liability Provision.

 "Exclusions in policies of insurance must be read seriatim, not cumulatively, and if any one exclusion applies there can be no coverage since no one exclusion can be regarded as inconsistent with another." *Transp. Ins. Co. v. AARK Constr. Group*, 526 F.Supp.2d 350, 356 (E.D.N.Y.2007) (*quoting Ruge v. Utica First Ins. Co.*, 32 A.D.3d 424, 426, 819

N.Y.S.2d 564 (2d Dep't 2006); *see also Zandri Constr. Co. v. Firemen's Ins. Co.*, 81 A.D.2d 106, 440 N.Y.S.2d 353, 356 (3d Dep't 1981), *aff'd sub nom* 54 N.Y.2d 999, 430 N.E.2d 922, 446 N.Y.S.2d 45 (1981)).

Here, the provision pertaining to contractual liability in the Commercial General Liability Coverage Part states that the contractual liability exclusion does not apply to liability for damages assumed in an agreement that can be considered an insured contract. The Cross–Liability Provision excludes coverage under the insurance policy for bodily injuries to an employee of any insured. These provisions provide two separate exclusions, and there is no basis for finding that the Cross–Liability Provision does not apply to insured contracts. If Burlington intended to exclude "insured contracts" from the provision denying coverage for injuries to employees, it could have expressly stated as such. *See Maroney v. New York Cent. Mut. Fire Ins. Co.*, 5 N.Y.3d 467, 473, 839 N.E.2d 886, 805 N.Y.S.2d 533 (N.Y.2005) ("If the insurer explicitly, as it does in the very same policy's medical payments coverage provisions."). Here, DaVinci has not provided the Court with any reason to find that the insured contract exception applies to the separate Cross–Liability Provision.

### D. DaVinci's Reasonable Expectations Do Not Preclude Burlington From Enforcing the Cross–Liability Provision

 DaVinci argues that it reasonably expected the Burlington Policy to provide coverage for injured employees, and as such Burlington should be equitably estopped from enforcing the cross liability exclusion. The Court rejects this argument. The Court has already found that the cross liability exclusion unambiguously excludes coverage to any employee of an

insured. To the extent that DaVinci, a sophisticated business represented by an attorney, believed that the Burlington policy covered injured employees, such an expectation of coverage would not be reasonable given the plain language of the Burlington Policy. *See McCarthy v. Am. Int'l Group*, 283 F.3d 121, 124 (2d Cir. N.Y.2002) ("Unambiguous terms are to be given their plain and ordinary meaning, and ambiguous language should be construed in accordance with the reasonable expectations of the insured.") (internal quotations and citations omitted).

In sum, the Court finds that the cross liability exclusion in the Burlington Policy precludes coverage for Plaintiff's injuries, and therefore GRANTS Burlington's motion for summary judgment against DaVinci, and DENIES DaVinci's motion for summary judgment against Burlington.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's partial motion for summary judgment, DENIES Avalon-Bay's motion for summary judgment on its cross-claims against DaVinci, GRANTS Burlington's motion for summary judgment against DaVinci, and DENIES DaVinci's motion for summary judgment against Burlington.

SO ORDERED.